**LATHAM & WATKINS LLP**
Blake T. Denton (N.J. Bar No. 029002008)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
blake.denton@lw.com

David C. Tolley (*pro hac vice* forthcoming)
William J. Trach (*pro hac vice* forthcoming)
U. Gwyn Williams (*pro hac vice* forthcoming)
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
david.tolley@lw.com
william.trach@lw.com
gwyn.williams@lw.com

*Attorneys for Plaintiff*
*United Healthcare Services, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED HEALTHCARE SERVICES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SOOD MEDICAL PRACTICE, LLC,<br><br>Defendant. | Case No. 2:26-cv-02921 (SDW) (CF)<br><br>Hon. Susan D. Wigenton<br>Hon. Cari Fais<br><br>**Oral Argument Requested**<br><br>**Motion Day: May 4, 2026** |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS APPEAL FROM THE MAGISTRATE JUDGE'S MARCH 25, 2026 STAY AND ADMINISTRATIVE TERMINATION ORDER**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ............................................................................................ 1

ARGUMENT ................................................................................................ 2

I. THE LEAD CASE IS IRRELEVANT TO THIS ACTION ................. 2

II. THE STAY ORDER WAS CLEARLY ERRONEOUS AND SHOULD BE VACATED ......................................................... 3

CONCLUSION ............................................................................................ 8

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aetna Health Inc. et al. v. Radiology Partners, Inc. et al.*,
No. 3:24-cv-01343 (BJD) (LLL) (M.D. Fla. Apr. 16, 2026), ECF No. 105 ....4

*Akishev v. Kapustin*,
23 F. Supp. 3d 440 (D.N.J. 2014) ....7

*Anthem Blue Cross Life & Health Ins. Co. et al. v. HaloMD LLC et al.*,
No. 8:25-cv-01467 (KES) (C.D. Cal. Apr. 9, 2026), ECF No. 135 ....4

*Konopca v. Comcast Corp.*,
2016 WL 1645157 (D.N.J. Apr. 26, 2016) ....7

*Lento v. Altman*,
2024 WL 4754761 (D.N.J. Nov. 12, 2024) ....5, 6

*N.E. Neurological Assoc. v. Indep. Care Grp. Plus*,
No. 2:24-cv-08252 (BRM) (CF) (D.N.J. Jan. 16, 2026), ECF No. 28 ....4

*Rowe Plastic Surgery of NJ LLC v. Aetna Life Ins. Co.*,
No. 2:25-cv-15053 (BRM) (LDW) (D.N.J. Apr. 7, 2026), ECF No. 29-1 ....2, 3

*Zoetics, Inc. v. Yahoo!, Inc.*,
2006 WL 1876912 (D. Del. July 6, 2006) ....3, 7

## RULES

L. Civ. R. 78.1(a) ....1

## OTHER AUTHORITIES

U.S. District Court for the District of New Jersey, *Motion Days for 2026*,
https://www.njd.uscourts.gov/sites/njd/files/2026Motions.pdf (last visited Apr. 23, 2026) ....1

## INTRODUCTION

United brought this appeal to correct a clear misapplication of the Chief Judge's January 16 Stay Order.[1] That Order stayed actions "in which plaintiffs seek to enforce Independent Dispute Resolution awards pursuant to the No Surprises Act." United is not a medical provider bringing an enforcement action. United seeks damages and injunctive relief because Sood improperly forced United into an inapplicable arbitration process by knowingly submitting an ineligible Medicare claim to the NSA IDR process through false attestations. Nothing in the Lead Case's motion to dismiss will address, let alone resolve, United's claims.

Rather than engage with United's arguments, Sood mischaracterizes the Lead Case's scope and devotes the bulk of its opposition to prematurely litigating a motion to dismiss that has not been filed. The sole question before this Court is whether the Magistrate Judge's March 25 Stay Order was clearly erroneous or contrary to law. United respectfully asserts that it was.[2]

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in United's Memorandum of Law in Support of Its Appeal from the Magistrate Judge's March 25, 2026 Stay and Administrative Termination Order ("Opening Brief") [ECF No. 8-1].

[2] Pursuant to L. Civ. R. 78.1(a), Sood's opposition was due on April 20, 2026. *See* U.S. District Court for the District of New Jersey, *Motion Days for 2026*, https://www.njd.uscourts.gov/sites/njd/files/2026Motions.pdf (last visited Apr. 23, 2026). Without seeking leave of Court, Sood waited until April 22, 2026, to file its opposition, *see* ECF No. 11 ("Opp."), leaving United only five days to file this reply.

## ARGUMENT

### I. THE LEAD CASE IS IRRELEVANT TO THIS ACTION

The Lead Case's motion to dismiss addresses a single, narrow question: "Can an out-of-network provider judicially enforce an IDR determination issued under the NSA under any cause of action, whether federal or state?" *Rowe Plastic Surgery of NJ LLC v. Aetna Life Ins. Co.*, No. 2:25-cv-15053 (BRM) (LDW), ECF No. 29-1 ("Aetna Mot.") at 13. That question has no bearing on this case. United is not seeking to enforce an IDR award—it is suing for Sood's false attestation that an ineligible Medicare claim was "within the scope of the Federal IDR process." ECF No. 1 ("Compl.") ¶ 4.

Sood's opposition misrepresents the scope of the Lead Case's motion to dismiss. Sood asserts that the Lead Case addresses sweeping jurisdictional questions encompassing United's claim and litigates "whether common law claims—like United's fraud claim here—are viable in light of the NSA." Opp. at 12. That assertion is wrong. The Lead Case addresses whether *providers* can use common law theories to circumvent the NSA's prohibition on judicial *enforcement* of IDR awards. *See* Aetna Mot. at 31 ("[A]ll such common law causes of action impermissibly seek to circumvent Congress's intent that there is no private right of action or private remedy *to judicially enforce* an IDR determination under the NSA." (emphasis added)). United's claim does no such thing: it seeks damages for Sood's

improper initiation of the IDR process in the first instance (on a facially ineligible Medicare claim), not enforcement of any award on a commercial claim covered by the NSA. *See* Opening Br. at 3-5, 8-10. Plainly, United's lawsuit has no analog to the Lead Case.

Sood's speculation that the Lead Case "may" address "HHS administrative remedies and exhaustion requirements," Opp. at 15, fares no better. Speculation about issues that "may" be addressed is not a basis for maintaining a stay. *Cf. Zoetics, Inc. v. Yahoo!, Inc.*, 2006 WL 1876912, at *2 (D. Del. July 6, 2006) ("Staying the action pending a non-parallel proceeding in which the issue in question *may* be addressed leaves too much uncertainty to substantially advance judicial economy." (footnote omitted)). Even if the Lead Case does address administrative remedies, that argument would be inapplicable here: Aetna's administrative-exhaustion argument in the Lead Case is specifically premised on providers who "opt-in" to the IDR process. Aetna Mot. at 20-25. United did not opt in—it was forced into a nonconsensual, inapplicable arbitration as a direct result of Sood's fraudulent eligibility attestation. Compl. ¶¶ 69-76, 108.

## II. THE STAY ORDER WAS CLEARLY ERRONEOUS AND SHOULD BE VACATED

Sood offers no meaningful defense of the Stay Order. Rather, the bulk of Sood's opposition is devoted to attempting to prematurely litigate the merits of a hypothetical motion to dismiss. If Sood believes United's allegations are deficient,

it may file a motion to dismiss in due course.[3] But the issue before the Court is not whether United's Complaint survives a motion to dismiss. The only issue before the Court is whether the March 25 Stay Order should be vacated. It should. The Magistrate Judge misapplied the January 16 Stay Order to a case outside its scope, and the stay causes clear and ongoing harm.

*First*, the March 25 Stay Order was clearly erroneous. The January 16 Stay Order stayed actions "in which plaintiffs seek to enforce Independent Dispute Resolution awards pursuant to the No Surprises Act." *N.E. Neurological Assoc. v. Indep. Care Grp. Plus*, No. 2:24-cv-08252 (BRM) (CF), ECF No. 28 at 1. Indeed, the Magistrate Judge recognized that the central issue in the Lead Case was the *enforcement* of IDR awards. *See* March 25 Stay Order ("WHEREAS the Court stayed and administratively terminated hundreds of actions in which plaintiffs seek *to enforce* Independent Dispute Resolution awards pursuant to the No Surprises Act" (emphasis added)). This case is not an enforcement action.

---

[3] Sood's reliance on cases from other jurisdictions that dismissed insurer-initiated claims, *see* Opp. at 2, 13 (citing *Anthem Blue Cross Life & Health Ins. Co. v. HaloMD* and *Aetna Health Inc. v. Radiology Partners, Inc.*), is misplaced for two reasons. First, neither of those decisions addressed a stay appeal. Second, even if those cases were relevant, they do not establish that United's claim must fail. The question of subject-matter jurisdiction over United's claims is a matter for a motion to dismiss, not a basis for extending a stay order designed to address the enforceability of IDR awards. Likewise, Sood's resort to policy rhetoric, quoting at length from a blog post unrelated to the legal questions at issue, *see* Opp. at 6-8, is wholly unresponsive to the question before the Court and should be given no weight.

Sood asserts that the stay is justified because "the instant case hangs by a single jurisdictional thread—the NSA." Opp. at 1. But the January 16 Stay Order did not stay every case "involving" the NSA—it stayed enforcement actions. That this case requires the Court to interpret the NSA does not make it "of the same nature" as an enforcement action, any more than every federal-question case involving a particular statute shares the same substantive issues. The operative question is whether the claims share the threshold legal issue that warranted the stay—and they plainly do not.

Sood's contention that "whether the NSA created federal jurisdiction . . . does not turn on the identity of a plaintiff," Opp. at 15, misses the point entirely. The relevant distinction is not merely *who* is suing, but *what* they seek: United does not seek judicial enforcement of an IDR award but rather damages and injunctive relief for fraud in the initiation of an IDR proceeding that should never have occurred. The Magistrate Judge's unexplained conclusion that this action is "of the same nature" as the Lead Case enforcement actions was clear error.

*Second*, the stay should be lifted because the Lead Case's motion to dismiss will neither "substantially affect" nor "be dispositive of" any issue in this action. *See* Opening Br. at 9-11. Again, the Lead Case addresses one question: whether IDR awards can be judicially enforced. United's claim does not depend on that question in any way. Sood's invocation of *Lento v. Altman*, 2024 WL 4754761

(D.N.J. Nov. 12, 2024), for the proposition that the stay avoids "inconsistent rulings," Opp. at 19, is misplaced. In *Lento*, the court stayed a case because a decision on the merits "may create inconsistent rulings in what is essentially the same litigation" as another case then on appeal to the Third Circuit. *Id.* at *3. Here, no such overlap exists: the Lead Case addresses legal issues entirely distinct from those presented here.

*Third*, the stay causes ongoing harm. Every day this case remains stayed, Sood is free to continue its fraudulent conduct, and United is denied any opportunity to seek injunctive relief.[4] A stay pending the resolution of a motion to dismiss that addresses an entirely different legal question leaves United without a remedy to prevent ongoing harm. Sood's dismissive assertion that United's only damages amount to a $715 IDRE fee, Opp. at 17, fundamentally mischaracterizes United's claims. United seeks injunctive relief and damages for fraud. *See* Compl. ¶¶ 100-01. Sood has submitted more than 170 claims to the NSA IDR process since January 2025 and continues to do so. *Id.* ¶ 102. The stay thus actively prevents United from seeking relief against an ongoing pattern of illegal conduct.

---

[4] To the extent Sood contests the sufficiency of the Complaint's allegations regarding Sood's relationship with its agent, Gottlieb & Greenspan, or suggests that Medicare Advantage plans may indeed be eligible for IDR, Opp. at 17 nn.7, 8, those disputes further underscore the need for this case to proceed through normal motion practice and discovery, not remain stayed.

*Fourth*, Sood's contention that United somehow "waived" the stay-factor analysis is meritless and conflates two entirely distinct legal frameworks. The question on appeal is simple: whether the Magistrate Judge engaged in clear error in concluding that the January 16 Stay Order, by its terms, encompasses this case. That is a fundamentally distinct inquiry from the stay-factor analysis, which is a substantive framework for deciding whether to *issue* a new stay. And when determining whether to issue a stay, it is "[t]he party seeking a stay of civil litigation," *i.e.*, Sood, that "bears the burden to show that the stay would be appropriate." *Konopca v. Comcast Corp.*, 2016 WL 1645157, at *3 (D.N.J. Apr. 26, 2016). Sood has not done so.[5]

---

[5] Even if United did have the burden of showing that a stay is *not* warranted (and it does not), the factors weigh clearly in favor of United, for the reasons articulated in United's Opening Brief. On undue prejudice, United explained that "[t]he stay causes real harm" because Sood "has submitted more than 170 claims to the NSA IDR process since January 2025 and continues to do so." Opening Br. at 3. On simplification of issues, United demonstrated at length that the Lead Case's motion to dismiss "will not resolve any of the factual or legal issues in this action." *Id.* at 9-11. Accordingly, although this case is in its infancy, a stay is plainly inappropriate here. *See Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446-48 (D.N.J. 2014) (declining to stay case in early stages of litigation where court concluded that undue-prejudice factor favored denial of stay and that disposition of other pending litigation would fail to "simplify the issues to be litigated in this action to a degree sufficient to warrant a stay"); *see also Zoetics*, 2006 WL 1876912, at *2 (same). That conclusion is only strengthened by the fact that Sood has failed to explain how it "would suffer a hardship or inequity if forced to proceed." *Konopca*, 2016 WL 1645157, at *4 (concluding that this factor weighed against staying case where only potential "hardship" defendant identified was "the possibility that the parties may engage to some extent in unnecessary discovery and/or motion practice").

*Finally*, Sood's estoppel argument reinforces United's position. Sood asserts that United "did not object" to the January 16 Stay Order in other cases and that United's acceptance of the stay in those cases is somehow inconsistent with its position here. Opp. at 2, 18. But the opposite is true: United's acceptance of the stay in those cases is entirely consistent with its objection here. In those cases, United is the defendant in provider-initiated enforcement actions. The January 16 Stay Order was designed to promote judicial efficiency by consolidating the threshold legal question of IDR award enforceability; applying it to this action, which raises no such question, defeats that purpose. United's consistent posture—accepting the stay where appropriate and objecting where it is not—proves, rather than undermines, the critical distinction this appeal presents.

## **CONCLUSION**

For the foregoing reasons, and for the reasons set forth in United's Opening Brief, this Court should vacate the Magistrate Judge's March 25, 2026 Stay Order [ECF No. 4] and reopen and restore this action to the Court's active docket.

Dated: April 27, 2026

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: *s/ Blake T. Denton*
Blake T. Denton (N.J. Bar No. 029002008)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
blake.denton@lw.com

David C. Tolley (*pro hac vice* forthcoming)
William J. Trach (*pro hac vice* forthcoming)
U. Gwyn Williams (*pro hac vice* forthcoming)
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
david.tolley@lw.com
william.trach@lw.com
gwyn.williams@lw.com

*Attorneys for Plaintiff*
*United Healthcare Services, Inc.*