**LATHAM & WATKINS LLP**
Blake T. Denton (N.J. Bar No. 029002008)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
blake.denton@lw.com

David C. Tolley (*pro hac vice*)
William J. Trach (*pro hac vice*)
U. Gwyn Williams (*pro hac vice*)
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
david.tolley@lw.com
william.trach@lw.com
gwyn.williams@lw.com

*Attorneys for Plaintiff*
*United Healthcare Services, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED HEALTHCARE SERVICES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SOOD MEDICAL PRACTICE, LLC,<br><br>Defendant. | Case No. 2:26-cv-02921 (SDW) (CF)<br><br>Hon. Susan D. Wigenton<br>Hon. Cari Fais<br><br>**Oral Argument Requested**<br><br>**Motion Day: September 8, 2026** |

**UNITED HEALTHCARE SERVICES, INC.'S OPPOSITION TO SOOD MEDICAL PRACTICE, LLC'S MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................1

BACKGROUND ....................................................................................3

I. SOOD KNOWINGLY SUBMITTED AN INELIGIBLE MEDICARE CLAIM ....................................................................................3

II. SYSTEMIC ABUSE IS UNDERMINING CONGRESSIONAL INTENT ....................................................................................4

ARGUMENT ....................................................................................6

I. JURISDICTION IS PROPER ....................................................................................6

A. This Court Has Federal Question Subject Matter Jurisdiction ....................................................................................6

1. United Has a Constitutional Right to Judicial Review ....................................................................................10

2. The NSA Case Law Sood Invokes Is Inapplicable ........13

B. United Has Article III Standing ....................................................................................16

C. No Exhaustion Requirement Bars United's Claims ....................20

D. The Doctrine of Primary Jurisdiction Does Not Apply ............22

II. THE LITIGATION PRIVILEGE DOES NOT SHIELD SOOD'S FRAUD ....................................................................................24

III. SOOD'S FRAUD ARGUMENTS ARE WITHOUT MERIT ............28

A. United Has Satisfied Rule 9(b)'s Heightened Pleading Standard ....................................................................................28

B. Sood's Litigation Privilege and Agency Defenses Are Internally Inconsistent ....................................................................................31

C. Sood's False Attestation of Eligibility Was a Misrepresentation of Fact ....................................................................................33

D. United Has Adequately Alleged Reliance ....................................34

E. United Has Adequately Alleged Damages ....................................35

IV. UNITED IS ENTITLED TO INJUNCTIVE RELIEF, DECLARATORY RELIEF, PUNITIVE DAMAGES, AND ATTORNEYS' FEES ....................................................................36

V. SOOD HAS FORFEITED ITS CONCLUSORY AND UNDEVELOPED ARGUMENTS....................................................38

VI. LEAVE TO AMEND MUST BE GRANTED IF DEFICIENCIES EXIST IN THE COMPLAINT ................................39

CONCLUSION ..........................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*24-7 Prestige Transp. & Courier Servs., LLC v. Jersey Drive Servs., LLC*,
2026 WL 1878691 (D.N.J. June 30, 2026) ........ 38

*Alexander v. Hackensack Meridian Health*,
2020 WL 5810526 (D.N.J. Sept. 30, 2020) ........ 25, 27

*Allen ex rel. Martin v. LaSalle Bank, N.A.*,
629 F.3d 364 (3d Cir. 2011) ........ 24

*Anderson v. Gannett Co.*,
2023 WL 3604656 (D.N.J. May 23, 2023) ........ 18

*Andreotta v. Renegade RV*,
2021 WL 838336 (D.N.J. Mar. 4, 2021) ........ 27

*Anthem Blue Cross Life & Health Ins. v. HaloMD LLC*,
2026 WL 982629 (C.D. Cal. Apr. 9, 2026) ........ 15, 16

*Applebaum v. Fabian*,
2021 WL 5833454 (D.N.J. Dec. 9, 2021) ........ 35

*Ashwander v. TVA*,
297 U.S. 288 (1936) ........ 12

*Banco Popular N. Am. v. Gandi*,
876 A.2d 253 (N.J. 2005) ........ 36

*Blue Cross Blue Shield Healthcare Plan of Ga. v. HaloMD*,
2026 WL 2017291 (N.D. Ga. July 10, 2026) ........ 15, 16

*Blue Cross Blue Shield of Tex. v. HaloMD LLC*,
2026 WL 1557492 (E.D. Tex. May 22, 2026) ........ 15, 16

*Carr v. Saul*,
593 U.S. 83 (2021) ........ 20, 21

*Carter v. Carter Coal Co.*,
298 U.S. 238 (1936)....................13

*Complete Med. Wellness LLC v. Horizon Blue Cross Blue Shield of N.J.*,
2025 WL 3443620 (D.N.J. Dec. 1, 2025)....................28

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*,
485 U.S. 568 (1988)....................12

*Filippatos v. United States*,
2025 WL 3765407 (D.N.J. Dec. 30, 2025)....................39

*Gasperetti v. Deborah Heart & Lung Ctr.*,
2017 WL 5619212 (N.J. Super. Ct. App. Div. Nov. 22, 2017)....................28

*Gen. Motors Corp. v. United States*,
2005 WL 548266 (D.N.J. Mar. 2, 2005)....................39

*Giles v. Phelan, Hallinan & Schmieg, L.L.P.*,
901 F. Supp. 2d 509 (D.N.J. 2012)....................31

*Gorlamari v. Verrica Pharms., Inc.*,
2024 WL 4026176 (E.D. Pa. Sept. 3, 2024)....................20

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005)....................7, 8, 9, 10

*Guardian Flight, LLC v. Health Care Serv. Corp.*,
140 F.4th 271 (5th Cir. 2025)....................14

*Gunn v. Minton*,
568 U.S. 251 (2013)....................7, 10

*Hernandez v. City of Paterson*,
2023 WL 6876008 (D.N.J. Oct. 18, 2023)....................37

*Holtzman v. Phila. Museum of Art*,
2022 WL 2651851 (E.D. Pa. July 7, 2022)....................9

*Hrymoc v. Ethicon, Inc.*,
297 A.3d 1245 (N.J. 2023)....................37

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ....................................................................20

*Interventional Pain Mgmt. v. Horizon Blue Cross Blue Shield of N.J.*,
2025 WL 3470569 (D.N.J. Dec. 3, 2025)...................................................28, 36

*IPCO Safety Corp. v. WorldCom, Inc.*,
944 F. Supp. 352 (D.N.J. 1996)...................................................................22

*JNL Mgmt., LLC v. Hackensack Univ. Med. Ctr.*,
2019 WL 1951123 (D.N.J. May 2, 2019).......................................................31

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
119 F.3d 1070 (3d Cir. 1997) ....................................................................38

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................................................................................17

*M.K. ex rel. Barlowe K. v. Prestige Acad. Charter Sch.*,
302 F. Supp. 3d 626 (D. Del. 2018)...............................................................8

*Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
772 F.3d 158 (3d Cir. 2014) ........................................................................7

*Material Damage Adjustment Corp. v. Open MRI of Fairview*,
799 A.2d 731 (N.J. Sup. Ct. Law Div. 2002) ...............................................35

*Migliore v. Vision Solar LLC*,
160 F.4th 79 (3d Cir. 2025) .......................................................................32

*Miles Tech., Inc. v. Apex I.T. Grp., LLC*,
2013 WL 1352024 (N.J. Super. Ct. App. Div. Apr. 5, 2013)..........................37

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993) ....................................................................20

*PharmaCann Penn, LLC v. BV Dev. Superstition RR, LLC*,
318 F. Supp. 3d 708 (E.D. Pa. 2018)...............................................................7

*Potter v. Cozen & O'Connor*,
46 F.4th 148 (3d Cir. 2022) .......................................................................18

*Raritan Baykeeper v. NL Indus., Inc.*,
660 F.3d 686 (3d Cir. 2011) ....................22

*Read v. Profeta*,
397 F. Supp. 3d 597 (D.N.J. 2019)....................19

*Reiter v. Cooper*,
507 U.S. 258 (1993)....................23

*Reynolds v. Wagner*,
128 F.3d 166 (3d Cir. 1997) ....................38

*Robins v. Robins-McCafferty*,
2015 WL 6951693 (D.N.J. Nov. 9, 2015) ....................31

*Ryan v. N.J. State Bd. of Nursing*,
2016 WL 3533997 (D.N.J. June 28, 2016)....................28

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014) ....................20

*SEC v. Jarkesy*,
603 U.S. 109 (2024)....................11

*SpecialtyCare Inc. v. Meritain Health, Inc.*,
2026 WL 353259 (D. Del. Feb. 9, 2026)....................14

*Sun Valley Orchards, LLC v. U.S. Dep't of Labor*,
148 F.4th 121 (3d Cir. 2025) ....................11, 12

*Talley v. United States*,
2014 WL 282680 (D.N.J. Jan. 24, 2014)....................40

*Tamburrino v. UnitedHealth Grp. Inc.*,
2022 WL 1213467 (D.N.J. Apr. 25, 2022)....................18, 19

*United States ex rel. IBEW Local 98 v. Farfield Co.*,
389 F. Supp. 3d 275 (E.D. Pa. 2019)....................22

*United States v. Rodgers*,
461 U.S. 677 (1983)....................9

*UnitedHealthcare of Pa., Inc. v. NorthStar Anesthesia of Pa., LLC*,
2026 WL 1145885 (E.D. Pa. Apr. 28, 2026)....................14, 15

*Wellness Int'l Network, Ltd. v. Sharif*,
575 U.S. 665 (2015)....................12

*Williams v. BASF Catalysts LLC*,
765 F.3d 306 (3d Cir. 2014)....................24, 25, 26

*Zagami, LLC v. Cottrell*,
957 A.2d 691 (N.J. Super. Ct. App. Div. 2008)....................27

**STATUTES**

9 U.S.C. § 10(a)....................15, 16

28 U.S.C. § 1331....................10

42 U.S.C.
§ 300gg-111(c)(1)(A)-(B)....................8, 33
§ 300gg-111(c)(5)(E)(i)(I)....................24, 35

**RULES**

Fed. R. Civ. P. 15(a)(2)....................39

Fed. R. Evid. 602....................19

L. Civ. R. 7.2(a)....................19

Fed. R. Civ. P. 9(b)....................2, 28, 31

Fed. R. Civ. P. 12(b)(1)....................19

Fed. R. Civ. P. 12(b)(6)....................18

**REGULATIONS**

42 C.F.R. §§ 422.503-504....................18

45 C.F.R. § 149.510(c)(4)(iii)....................13

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Article III, § 2, cl. 1....................10

## OTHER AUTHORITIES

Am. Health Ins. Plans & Blue Cross Blue Shield Ass'n, *New AHIP/BCBSA Survey Finds Providers are Flooding IDR System with Ineligible Disputes*, https://ahiporg-production.s3.amazonaws.com/documents/202510_AHIP_IB_No_Surprises_Act_Survey51.pdf ....................6

CBO Estimate for Divisions O Through FF of H.R. 133 (Jan. 14, 2021), https://www.cbo.gov/publication/56962 ....................4

CMS, Federal IDR Process Guidance for Certified IDR Entities (Dec. 2023), https://www.cms.gov/files/document/federal-idr-guidance-idr-entities-march-2023.pdf ....................7, 33

H.R. REP. NO. 116-615 (2020) ....................4

Jessica Hale et al., *A Call for New Research on the No Surprises Act*, Congressional Budget Office (June 15, 2026), https://www.cbo.gov/publication/62491 ....................5

Sarah Kliff et al., *Trump Administration Says Surprise Billing Law Is Being 'Gamed' by Doctors*, N.Y. Times (July 22, 2026), https://perma.cc/PT4J-LE8K ....................5

## INTRODUCTION

This case is straightforward. After having received prior authorization to provide services to a Medicare Advantage member insured by United Healthcare Services, Inc. ("United"), Sood Medical Practice, LLC ("Sood") had its agent submit a false attestation in connection with the federal No Surprises Act's ("NSA") Independent Dispute Resolution ("IDR") process certifying that its Medicare claim was "qualified" for the IDR process. Sood knew that attestation was fraudulent because federal law, the NSA, categorically excludes Medicare claims from the IDR process. Sood's false attestation induced the IDR entity ("IDRE") to award Sood $14,560.00 on a claim for which the Medicare fee schedule mandated payment of only $52.33. United brings this action to hold Sood accountable for fraud.

Sood admits the IDR process that Congress created has "backfired," but conspicuously fails to acknowledge why. The NSA has "backfired" because providers like Sood are abusing the process by submitting ineligible claims like the Medicare claim at issue here. Congress enacted the NSA to protect patients from unreasonably high medical bills, not to allow providers like Sood to submit ineligible claims at taxpayers' expense. This is not a "be careful what you wished for" moment for United. This is a question of what the NSA was actually designed to do, and it was plainly never intended to apply to the Medicare claim before this Court.

Sood's motion to dismiss is a kitchen-sink filing. Sood argues there is no subject matter jurisdiction. It argues United lacks standing. It argues United failed to exhaust. It invokes primary jurisdiction. It invokes the litigation privilege. It challenges Rule 9(b) particularity. It disputes agency, reliance, and damages. The arguments are not consistent with one another, and several are internally contradictory. At the end of the day, the only thing that matters is this: this is a case about a claim that is categorically excluded from the NSA IDR process. United has a constitutional right to challenge a fraudulent attestation that invoked a process that should never have applied, and United cannot be foreclosed from doing so.

The Court should deny Sood's motion. ***First***, this Court possesses federal question jurisdiction over United's fraud claim because an essential element of that claim is United's federal statutory right not to be subjected to an IDR process from which Medicare claims are expressly exempted, and Sood's conduct was fraudulent specifically because federal law categorically excludes such claims from IDR. ***Second***, the litigation privilege does not shield Sood's fraud because it was never intended to protect conduct calculated to thwart the statutory process Congress created. ***Third***, United's Complaint satisfies Rule 9(b)'s heightened pleading standard, as Sood itself concedes. ***Fourth***, United is entitled to the injunctive, declaratory, and monetary relief it seeks.

## BACKGROUND

Sood, acting through its agent Gottlieb & Greenspan, LLC ("Gottlieb"), knowingly submitted a false attestation certifying that a Medicare Advantage claim qualified for the NSA IDR process, despite having received documentation on multiple occasions establishing that the claim was ineligible. Compl. ¶¶ 53, 61, 66-70, 106. Sood then persisted in pursuing the claim through IDR, *id.* ¶¶ 70-76, and ultimately obtained an award of $14,560.00 on a claim for which it was entitled to only $52.33 under the Medicare fee schedule mandated by the Centers for Medicare & Medicaid Services ("CMS"), *id.* ¶¶ 61, 73. Sood does not dispute these facts, which must be accepted as true at this stage, and which establish a clear picture of Sood's intentional fraud.

### I. SOOD KNOWINGLY SUBMITTED AN INELIGIBLE MEDICARE CLAIM

On April 15, 2025, Sood sought prior authorization from United to provide pain injection therapy for a 92-year-old patient. *Id.* ¶ 53. United's approval letter indicated the patient was covered under a United Medicare plan and reimbursement was subject to Medicare. *Id.* After the patient received treatment, Sood submitted a claim to United, and United paid Sood $52.33, the amount required under CMS's Medicare fee schedule. *Id.* ¶¶ 59-61. United's Provider Remittance Advice ("PRA") expressly notified Sood that the patient was enrolled in Medicare Advantage and detailed the basis for the payment amount. *Id.* ¶¶ 62-66.

Despite this notice, Sood, through Gottlieb, initiated IDR on August 25, 2025, falsely attesting that the claim was "within the scope of the Federal IDR process." *Id.* ¶¶ 67, 70. Once Sood triggered the IDR process, United was compelled to participate and pay administrative fees or face a default judgment. *Id.* ¶ 108. United promptly objected, sending a letter to the IDRE on October 18, 2025, stating the claim was "*not eligible for IDR under the NSA*" because the patient was enrolled in Medicare, and attaching the PRA as proof. *Id.* ¶¶ 71-72. Despite this objection, the IDRE credited Sood's false certification and ruled in Sood's favor on October 31, 2025, awarding $14,560.00. *Id.* ¶ 73.

## II. SYSTEMIC ABUSE IS UNDERMINING CONGRESSIONAL INTENT

Congress enacted the NSA to shield patients from surprise medical bills and to reduce healthcare costs. The House Report accompanying the NSA noted that surprise billing stemmed from a "failure in the health care market" enabling providers to "charge amounts for their services that exceed the marginal cost of producing those services," yielding "compensation far above what is needed to sustain their practice." H.R. REP. NO. 116-615, at 53 (2020). The Congressional Budget Office ("CBO") initially estimated the IDR process would cut federal deficits by $17 billion and lower premiums by 0.5 percent. *See* CBO Estimate for Divisions O Through FF of H.R. 133 (Jan. 14, 2021), https://www.cbo.gov/publication/56962.

Recent evidence confirms the IDR process has not achieved these goals due to ongoing abuse. In June 2026, the CBO acknowledged that "[e]merging evidence suggests that the law might not have the effects that CBO anticipated," noting providers win over 80% of IDR cases with payments "much higher than expected." *See* Jessica Hale et al., *A Call for New Research on the No Surprises Act*, Congressional Budget Office (June 15, 2026), https://www.cbo.gov/publication/62491 (last visited August 7, 2026). From 2022 to mid-2025, 3.4 million disputes were filed, far exceeding the 22,000 per year originally projected, with awards "often exceed[ing] 400 or 500 percent of Medicare's prices." *Id.* Most critically, the CBO now warns "the law could cause premiums to increase" and "lead to larger federal deficits," the opposite of what Congress intended. *Id.*

The Trump Administration has also recognized the problem. A CMS spokesman recently stated that "[t]he system is being gamed to get higher prices[.]" Sarah Kliff et al., *Trump Administration Says Surprise Billing Law Is Being 'Gamed' by Doctors*, N.Y. Times (July 22, 2026), https://perma.cc/PT4J-LE8K. Recent CMS data shows provider payouts reached nearly $15 billion in 2025 (up from $4 billion in 2024). *Id.*

Congress evidently assumed providers would submit only legitimate claims to IDR. Instead, nearly one in five claims is ineligible, Compl. ¶ 49, and health plans

rarely succeed in excluding them despite expending significant resources. *See* Am. Health Ins. Plans & Blue Cross Blue Shield Ass'n, *New AHIP/BCBSA Survey Finds Providers are Flooding IDR System with Ineligible Disputes*, https://ahiporg-production.s3.amazonaws.com/documents/202510_AHIP_IB_No_Surprises_Act_Survey51.pdf (last visited August 7, 2026).

Sood's fraud reflects the broader pattern Congress did not anticipate when it enacted the NSA: a provider submitting an ineligible claim to IDR and profiting when the insurer's objection is disregarded or overlooked by IDREs. Contrary to Sood's framing and discussion of the NSA, this is not a case about *commercial* claims or alleged underpayment by insurers on those *commercial* claims. *See* Mot. at 3. This case is about a single ineligible *Medicare* claim emblematic of providers' abuse of the NSA IDR process that has already added billions of dollars to overall health system costs. Compl. ¶ 47. If the Court accepts the arguments in Sood's Motion, Sood will continue to abuse the NSA IDR process at the expense of U.S. taxpayers, the precise result the NSA's fraud exception was designed to prevent.

## <u>ARGUMENT</u>

## I. JURISDICTION IS PROPER

### A. <u>This Court Has Federal Question Subject Matter Jurisdiction</u>

This Court has federal question subject matter jurisdiction over United's fraud claim. Federal courts have jurisdiction over state-law claims when the "vindication of a right under state law . . . necessarily turn[s] on some construction of federal

law." *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014). That standard is met whenever, as here, "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14 (2005). United's fraud claim satisfies each element.

The federal issue is necessarily raised because an essential element of United's fraud claim is its statutory right under the NSA not to be subjected to an IDR process for claims the statute expressly exempts. *See Manning*, 772 F.3d at 163 (federal issue necessarily raised where the state-law claim "necessarily turn[s] on some construction of federal law"); *see also PharmaCann Penn, LLC v. BV Dev. Superstition RR, LLC*, 318 F. Supp. 3d 708, 712 (E.D. Pa. 2018) (finding federal question necessarily raised "because a court must consider and ultimately apply federal law in order for [plaintiff] to get the relief it seeks"). Here, Sood's liability for fraud arises *only because* the NSA categorically excludes Medicare claims from the IDR process. *See* 42 U.S.C. § 300gg-111(c)(1)(A)-(B); CMS, Federal IDR Process Guidance for Certified IDR Entities at 7 (Dec. 2023), https://www.cms.gov/files/document/federal-idr-guidance-idr-entities-march-2023.pdf ("The Federal IDR process does not apply to items and services . . . payable

by Medicare"). Without interpreting the NSA's scope and eligibility provisions, no court could determine whether Sood's attestation was false.

The federal issue is also actually disputed because Sood disputes whether Medicare Advantage claims are categorically excluded from IDR as a matter of law. Mot. at 35 n.39 ("Plaintiff alleges that Medicare (Parts A & B), Medicaid, CHIP and Tricare plans are not eligible for the NSA IDR, citing to a CMS website. However, this allegation glosses over how, and whether, the differences between traditional Medicare and private Medicare Advantage plan ('MA plan') impact IDR eligibility[.]"). The parties thus dispute the scope of the NSA (and, as discussed *infra*, the available remedies for violations of the NSA). *Grable*, 545 U.S. at 309 (explaining case warranted federal jurisdiction "to resolve genuine disagreement over federal tax title provisions"); *see also M.K. ex rel. Barlowe K. v. Prestige Acad. Charter Sch.*, 302 F. Supp. 3d 626, 634 (D. Del. 2018) ("The fact that Plaintiff can seek to enforce her rights in a state court does not undercut the existence of a federal issue, where both Plaintiff's actual ability to recover, and [Defendant's] defenses, depend upon the construction of a federal statute.").

This case presents a substantial federal question because it implicates the federal government's interest in protecting the federal revenue that funds Medicare and the sound operation of a nationwide federal regulatory scheme. Substantiality turns on whether a federal issue matters to the federal system and federal policy as

a whole, not merely to the parties before the court. *Holtzman v. Phila. Museum of Art*, 2022 WL 2651851, at *7 (E.D. Pa. July 7, 2022) ("We agree that interpreting and applying the [federal Holocaust Expropriated Art Recovery Act] raises issues of significance to the federal system, as it implicates questions of law and policy."); *see also Prestige Acad. Charter Sch.*, 302 F. Supp. 3d at 635-36 (finding substantial federal issue where "[t]here would be no case or controversy under Delaware law or action in a Delaware court in the absence of the [federal Individuals with Disabilities Act], and the agreement Plaintiff would be seeking to enforce involves only rights conferred by federal law").

Whether Medicare Advantage claims are categorically excluded from the NSA IDR process bears directly on the financial integrity of the Medicare program itself. Medicare is funded by the federal government and United pays Medicare claims using Medicare program funds. Compl. ¶¶ 21, 23. Fraudulent attestations that divert Medicare-excluded claims into the IDR process draw on those program funds and threaten the federal regulatory scheme Congress created to administer them. The Supreme Court found an analogous interest sufficient in *Grable* itself: the IRS had a "strong interest" in the "prompt and certain collection of delinquent taxes," which depended on assuring clear title following IRS-ordered sales, giving the government "a direct interest in the availability of a federal forum to vindicate its own administrative action." *Grable*, 545 U.S. at 315 (quoting *United States v.*

*Rodgers*, 461 U.S. 677, 709 (1983)). The government's interest here is no less substantial. Just as the IRS needed a federal forum to protect the integrity of tax collection, there must be a federal forum to protect the integrity of Medicare disbursements from fraudulent manipulation of the IDR process.

Finally, exercising jurisdiction would not disturb the "congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. In *Prestige Academy*, the Third Circuit found no disruption where the dispute concerned a state agency's responsibilities under a federal statute, a "critical structural issue" defined entirely by federal law. 302 F. Supp. 3d at 637-38; *cf. Gunn*, 568 U.S. at 264. This case falls on the same side of that line. United's claim turns entirely on the NSA's exclusion of Medicare claims from IDR, a scheme Sood's fraud sought to circumvent, and exercising jurisdiction over this rare case will have only a limited effect on the federal-state division of labor.

**1. United Has a Constitutional Right to Judicial Review**

Beyond the statutory federal question under *Grable*, the Constitution itself mandates this Court's jurisdiction. Article III extends judicial power to all cases "arising under" the Constitution and laws of the United States. U.S. Const. art. III, § 2, cl. 1. Congress implemented that grant through 28 U.S.C. § 1331, which confers original jurisdiction on district courts over "all civil actions arising under the Constitution, laws, or treaties of the United States."

United's fraud claim arises under Article III. Common law fraud claims like United's are "the stuff of traditional actions at common law tried by the courts at Westminster in 1789" and therefore presumptively concern rights that Article III reserves to the judiciary. *SEC v. Jarkesy*, 603 U.S. 109, 128 (2024); *see also Sun Valley Orchards, LLC v. U.S. Dep't of Labor*, 148 F.4th 121, 129 (3d Cir. 2025). United alleges that Sood, through its billing agent Gottlieb, submitted a false attestation on August 25, 2025, certifying that an ineligible Medicare Advantage claim was "within the scope of the Federal IDR process." Compl. ¶¶ 67, 70. Sood, through Gottlieb, made a knowing misrepresentation of fact, to induce reliance, that caused United financial injury. "If a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory." *Jarkesy*, 603 U.S. at 128.

The public rights exception, which permits Congress to assign certain matters to non-Article III adjudicators, does not apply here. That exception is limited to matters that "historically could have been determined exclusively" by the Executive and Legislative Branches. *Id.* Common law fraud has no such history. To the contrary, fraud claims have been adjudicated by Article III courts, and their English antecedents, since well before the founding. The NSA cannot thwart that right.

Finally, United never knowingly and voluntarily consented to non-Article III adjudication of its fraud claim, which is a prerequisite for displacement of Article III

jurisdiction. The "key inquiry" is "whether the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the non-Article III adjudicator." *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 685 (2015). Here, United never submitted a claim against Sood before the IDRE and never invoked the IDRE's jurisdiction. To the contrary, Sood initiated the IDR proceeding. Compl. ¶¶ 67, 70. Sood's own fraudulent attestation compelled United to participate or face a default judgment. *Id.* ¶ 108. United thus lacked "any real choice about where it could challenge [Sood's] action." *Sun Valley*, 148 F.4th at 132.

These constitutional imperatives independently establish this Court's subject matter jurisdiction, but they also compel rejection of Sood's reading of the NSA. Sood argues that the NSA's vacatur provision strips this Court of jurisdiction over United's fraud claim. Mot. at 9-11. But accepting that argument would obliterate United's constitutional right to Article III adjudication. The constitutional avoidance canon forbids that result: where one construction of a statute would "raise serious constitutional problems," courts must "construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988); *see also Ashwander v. TVA*, 297 U.S. 288, 348 (1936) (Brandeis, J., concurring). This Court must therefore exercise jurisdiction because

the alternative (accepting Sood's interpretation) would unconstitutionally deprive United of Article III adjudication of its claim.

The structural protections underlying Article III independently require this Court's jurisdiction. IDREs are private, for-profit entities that conduct "baseball-style" arbitration confined to a limited set of submitted documents. *See* 45 C.F.R. § 149.510(c)(4)(iii). They have no authority to adjudicate fraud, no power to award damages, and no mechanism to remedy fraudulently initiated proceedings. Moreover, the private nondelegation doctrine bars Congress from vesting binding authority in private entities without adequate government supervision. *See Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936). IDREs are compensated exclusively by the parties who appear before them and are paid only when they resolve disputes on the merits, creating structural incentives to accept ineligible claims rather than dismiss them for lack of jurisdiction. *See* Compl. ¶¶ 83-86. Federal judicial review of fraud claims arising in connection with a federal statute returns oversight to a constitutionally adequate adjudicator and ensures that private IDREs cannot immunize fraudulent conduct by accepting claims they have no authority to hear. In short, United is entitled under the Constitution to present its case to this Court.

**2. The NSA Case Law Sood Invokes Is Inapplicable**

The NSA cases Sood invokes do not foreclose judicial review here. Many of the cases Sood cites concern whether *providers* have a right to judicially confirm or

enforce an IDR award on *commercial claims* that were eligible for the NSA IDR process. *See, e.g.*, *Guardian Flight, LLC v. Health Care Serv. Corp.*, 140 F.4th 271, 274-77 (5th Cir. 2025); *SpecialtyCare Inc. v. Meritain Health, Inc.*, 2026 WL 353259, at *3, *6 (D. Del. Feb. 9, 2026). But whether the NSA gives a provider an affirmative right to judicially *enforce* an IDR award is a different question from the one before this Court. United asserts no such claim and seeks no enforcement of any IDR determination. United asks the Court to adjudicate whether Sood, through Gottlieb, committed common law fraud by attesting that a categorically ineligible claim qualified for the IDR process in the first place. Whether providers may sue to enforce awards therefore has no bearing on whether United may pursue its own, distinct fraud claim.

Separately, Sood cites a set of decisions arising from insurers' NSA suits, but Sood's characterization of those decisions is inaccurate. Sood cites *UnitedHealthcare of Pennsylvania, Inc. v. NorthStar Anesthesia of Pennsylvania, LLC*, 2026 WL 1145885 (E.D. Pa. Apr. 28, 2026), with the parenthetical "(granting motion to dismiss United's NSA 'fraud' lawsuit)," and then cites three cases, each with the parenthetical "(same)." Mot. at 4 n.11 (citing *Anthem Blue Cross Life & Health Ins. v. HaloMD LLC*, 2026 WL 982629 (C.D. Cal. Apr. 9, 2026); *Blue Cross Blue Shield of Tex. v. HaloMD LLC*, 2026 WL 1557492 (E.D. Tex. May 22, 2026); and *Blue Cross Blue Shield Healthcare Plan of Ga. v. HaloMD*, 2026 WL 2017291

(N.D. Ga. July 10, 2026)). None of these cases is the same as the case presently before this Court. For example, *NorthStar* dismissed a single insurer's common law fraud claim in part because "[e]veryone agree[d]" the claim was ineligible for the NSA IDR process. 2026 WL 1145885, at *8. As noted above, Sood has not agreed that the Medicare Advantage claim at issue here is ineligible for the NSA IDR process. In *Anthem*, by contrast, the insurer plaintiffs challenged hundreds of IDR awards, pleading RICO and ERISA claims and seeking vacatur of IDR determinations under 9 U.S.C. § 10(a) without having "list[ed] all the IDR determinations they seek to vacate." 2026 WL 982629, at *1, *7. Different still, the court in *Blue Cross Blue Shield of Texas* dismissed claims covering more than 42,000 IDR *awards*, not one ineligible *submission*, reasoning, in part, that "[t]he alleged harm . . . did not result when Defendants submitted items and services for payment under the NSA." 2026 WL 1557492, at *3, *6. And in *Blue Cross Blue Shield Healthcare Plan of Georgia*, the plaintiff sought "vacatur of thousands of IDR determinations based on general allegations." 2026 WL 2017291, at *21. None of these decisions is "the same" as the case presently before this Court, and none holds that subject matter jurisdiction categorically cannot exist over an insurer's single-claim fraud action like this one.

Indeed, what unites *Anthem*, *Blue Cross Blue Shield of Texas*, and *Blue Cross Blue Shield Healthcare Plan of Georgia* is precisely what distinguishes them from

this case: each involved either a request to vacate IDR determinations under 9 U.S.C. § 10(a), a sprawling volume of individual medical claims spanning multiple providers, or both. *See Anthem*, 2026 WL 982629, at *4 (1,500+ IDR proceedings and 2,000+ services across multiple provider defendants); *Blue Cross Blue Shield of Tex.*, 2026 WL 1557492, at *3 (more than 42,000 IDR awards); *Blue Cross Blue Shield Healthcare Plan of Ga.*, 2026 WL 2017291, at *13, *21 (thousands of IDR proceedings and nearly $6 million in awards and over $900,000 in IDR-related fees at issue). United, by contrast, seeks no vacatur of any IDR award and challenges a single Medicare claim submitted by a single provider. United does not ask this Court to reexamine the IDRE's payment determination or to unwind any award; it asks the Court to adjudicate whether Medicare Advantage claims are ineligible for the IDR process and whether Sood thereby committed fraud by submitting a false eligibility attestation that invoked a process for which the claim never qualified. The volume concerns and vacatur-specific analysis that drove those prior decisions are simply absent here.

### B. <u>United Has Article III Standing</u>

United has Article III standing. A plaintiff establishes standing by demonstrating (a) an injury in fact that is concrete, particularized, and actual or imminent, (b) fairly traceable to the defendant's conduct, and (c) likely to be

redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). United satisfies each element.

United suffered a concrete financial injury: it paid a non-refundable $115 administrative fee and a $600 IDRE fee (total $715) that was not returned because the IDRE ruled against United.[1] Compl. ¶¶ 71-73, 83. That financial injury is directly traceable to Sood's conduct. Sood, through Gottlieb, submitted the eligibility certification on August 25, 2025, declaring that the claim was "qualified" for Federal IDR even though the claim at issue was a Medicare claim, a category the NSA excludes. *Id.* ¶¶ 42-48, 67. Absent that misrepresentation, the IDR proceeding would never have been initiated, United would never have been compelled to participate, and no fees or adverse award would have resulted.

Moreover, a favorable judicial decision, declaring that the claim was ineligible for Federal IDR, that Sood's attestation was fraudulent, and awarding damages, would redress United's injury. Only an Article III court can provide this relief. The IDRE has no authority to adjudicate fraud, no power to award damages, and no mechanism to return administrative fees wrongfully extracted through

[1] Notably, Sood does not seriously contest traceability or redressability, effectively conceding that injury in fact is the only element of standing genuinely in dispute. Mot. at 14-15.

misrepresentation. United's constitutional right to judicial redress of its fraud claim and its Article III standing to seek that redress are two sides of the same coin.

Sood's argument that United sued the "wrong entity" fails as a matter of fact and law. United Healthcare Services, Inc. is the entity responsible under 42 C.F.R. §§ 422.503-504 for defending the IDR process for its Medicare Advantage book of business, which includes affiliated plans such as UnitedHealthcare Insurance Company and Oxford Health Plans. Compl. ¶ 7. As set forth in the Complaint, the financial injuries discussed above were borne by United Healthcare Services, Inc.

Even if United Healthcare Services, Inc. were not the entity injured by Sood's fraudulent submission (it is), Sood's entity argument is not a proper jurisdictional challenge. "The . . . question [whether the plaintiff sued the right party] goes not to standing and jurisdiction but to the merits." *Anderson v. Gannett Co.*, 2023 WL 3604656, at *5 (D.N.J. May 23, 2023). Discovery, not dismissal, is the proper vehicle for exploring corporate structure. Indeed, *Potter v. Cozen & O'Connor*, 46 F.4th 148 (3d Cir. 2022), confirms that whether a plaintiff may assert rights belonging to another "presents only merits . . . concerns," governed by Rule 12(b)(6)'s plausibility standard, under which United's well-pled allegations of its own direct injury must be accepted as true. *See Potter*, 46 F.4th at 154-56.

Sood's reliance on *Tamburrino v. UnitedHealth Group Inc.*, 2022 WL 1213467 (D.N.J. Apr. 25, 2022) (Wigenton, J.), is equally misplaced. *Tamburrino*

held that certain UnitedHealth-affiliated entities were not proper ERISA defendants because the plaintiffs failed to allege those specific entities exercised discretionary authority as "administrators" or "fiduciaries." *Id.* at *6. That ERISA-specific inquiry has no bearing on this common law fraud case.

Sood has no visibility into United's internal corporate, billing, and cost-allocation structure, and it does not—and cannot—allege facts showing that some other corporate entity actually paid the fees Sood's fraud caused. Sood's entire theory rests on the Declaration of David M. Estes ("Estes Declaration"), Sood's litigation counsel, *see* Mot. at Exh. 2, which is itself procedurally improper and should not be considered at this juncture.[2] Declarations submitted in connection

[2] Mr. Estes also lacks the personal knowledge that Federal Rule of Evidence 602 and D.N.J. Local Civil Rule 7.2(a) require of a declarant. He does not claim to have participated in the IDR proceeding, corresponded with United on Sood's behalf, or otherwise possess first-hand knowledge of the facts he recites; he merely read the IDR award and correspondence after the fact. *See* Estes Decl. ¶¶ 3-11. That is insufficient. *See Read v. Profeta*, 397 F. Supp. 3d 597, 644 (D.N.J. 2019) (personal knowledge "requires that the witness 'who testifies to a fact . . . actually observed the fact'" (quoting Fed. R. Evid. 602 advisory committee's note to 1972 proposed rule)). Nor can the Estes Declaration find refuge as jurisdictional evidence properly submitted on a Rule 12(b)(1) or 12(b)(2) motion. While declarations may accompany such motions to establish jurisdictional facts, the Estes Declaration does none of that here: it says nothing about subject matter jurisdiction, standing, exhaustion, or primary jurisdiction, and it bears no relationship to any jurisdictional argument Sood raises. Using a declaration untethered to any jurisdictional question to inject disputed merits facts about United's corporate structure is procedurally improper.

with a motion to dismiss are properly limited to authenticating documents integral to or explicitly relied upon in the complaint; they may not be used to inject new facts contesting the merits. *See Schmidt v. Skolas*, 770 F.3d 241, 249-50 (3d Cir. 2014); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Witness declarations, as distinguished from the documents they purport to authenticate, "clearly may not be considered" at the pleading stage. *Gorlamari v. Verrica Pharms., Inc.*, 2024 WL 4026176, at *3 (E.D. Pa. Sept. 3, 2024).

### C. <u>No Exhaustion Requirement Bars United's Claims</u>

United need not exhaust any administrative remedy before bringing this fraud claim. Sood's argument that United failed to exhaust administrative remedies by not availing itself of the NSA's "Technical Assistance" reopening process fails.

***First***, no statute or regulation imposes an issue-exhaustion requirement here. "Typically, issue-exhaustion rules are creatures of statute or regulation." *Carr v. Saul*, 593 U.S. 83, 88 (2021). The NSA contains no provision requiring a party to exhaust administrative processes before raising Article III arguments in federal court, and no regulation promulgated under the NSA imposes such a requirement. And, even if it did, Sood cannot demand that United exhaust administrative remedies for a Medicare claim that was, at all times, ineligible for the NSA IDR process.

***Second***, as explained in Section I.A, United's constitutional right to Article III adjudication forecloses any exhaustion requirement. The NSA's administrative mechanisms are, at most, informal adjuncts to a private arbitral process that itself lacks the constitutional competence to adjudicate United's claim. "Agency adjudications are generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical expertise." *Carr*, 593 U.S. at 92.

***Third***, the futility exception applies. The Supreme Court "has consistently recognized a futility exception to exhaustion requirements." *Id.* at 93. United filed a Help Desk complaint and has received no relief after months of waiting. Compl. ¶ 76. But even more importantly, CMS cannot adjudicate fraud. CMS cannot award damages. CMS cannot enter a declaratory judgment. Simply put, there is no administrative avenue that will afford United the relief it seeks.

***Fourth***, Sood's own theory forecloses the very exhaustion it demands. Sood argues that United must exhaust administrative remedies, yet Sood separately argues that no judicial review is ever available for United's fraud claim. United already tried the administrative channel available: the CMS Help Desk complaint process. *Id.* Nothing came of it. No principle of administrative law supports a regime that forecloses relief at every turn.

### D. The Doctrine of Primary Jurisdiction Does Not Apply

The doctrine of primary jurisdiction does not bar this action. Primary jurisdiction is a pragmatic prudential doctrine of judicial convenience, not a jurisdictional bar. *United States ex rel. IBEW Local 98 v. Farfield Co.*, 389 F. Supp. 3d 275, 282 (E.D. Pa. 2019). As a prudential doctrine, it cannot override the constitutional mandate established above. Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Raritan Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011). Sood, the party invoking primary jurisdiction, bears the burden of demonstrating its application under the four-factor test it articulates, and Sood cannot carry that burden.

***First***, United's fraud claim is within conventional judicial competence. Courts apply primary jurisdiction where the underlying dispute involves technical regulatory questions committed to an agency's specialized expertise. *See IPCO Safety Corp. v. WorldCom, Inc.*, 944 F. Supp. 352, 355-56 (D.N.J. 1996). The facts of this case do not present such a question. The question whether Sood knowingly submitted a false attestation is a quintessentially judicial determination.

***Second***, primary jurisdiction refers cases to agencies that have "expert administrative discretion" over the question at issue. *Id.* at 355. CMS has no authority to adjudicate common law fraud claims between private parties. CMS has no power to award damages. CMS has no mechanism to compensate United for the

injury caused by Sood's false attestation. Referring this case to CMS would leave United's fraud claim entirely unadjudicated.

***Third***, no substantial danger of inconsistent rulings exists. United does not ask this Court to second-guess a "payment determination" made under the IDR process. United asks this Court to adjudicate whether Sood committed fraud by certifying eligibility for a process from which the claim was categorically excluded. A judicial determination that Sood's attestation was fraudulent creates no risk of conflict with any CMS determination—it addresses Sood's *conduct* in initiating the proceeding, not the merits of any underlying payment dispute.

***Fourth***, United's Help Desk complaint does not compel referral. United filed an informal, non-binding Help Desk complaint with CMS. Compl. ¶ 76. The complaint went nowhere. An informal complaint to a federal agency does not trigger primary jurisdiction, particularly where the agency has demonstrated no interest in adjudicating the dispute. *See Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993). More fundamentally, Sood cannot have it both ways. Sood simultaneously argues that United must exhaust futile administrative processes before filing suit *and* that no judicial review is available even after those processes are exhausted as United must be referred back to CMS. Under Sood's theory, United is trapped: perpetually required to seek administrative relief that will never come, while permanently barred

from the Article III court to which the Constitution entitles it. That cannot be the law.

## II. THE LITIGATION PRIVILEGE DOES NOT SHIELD SOOD'S FRAUD

The litigation privilege does not shield Sood's fraud. The privilege has never been, and should not become, a license to commit fraud. By Sood's logic, every statement in any IDR proceeding would be protected by the litigation privilege, a result that would immunize all statements in every IDR dispute and eviscerate Congress's fraud exception. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I) (IDR determination is binding only "in the absence of a fraudulent claim or evidence of misrepresentation of facts"). "[A]pplication of the New Jersey litigation privilege does not absolve" Sood from liability when doing so would require this Court to "disregard the statutory text." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 369 (3d Cir. 2011).

Furthermore, Sood seeks to expand the litigation privilege to a context in which it was never intended to apply: fraud "calculated to thwart" the IDR process and congressional intent. *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 318-20 (3d Cir. 2014). In *Williams*, the Third Circuit held that the privilege's original purpose was to protect defamatory statements so that parties may freely advocate, not to shield deliberate fraud that "actively frustrated the search for truth." *Id.* Sood initiated a proceeding it knew to be wrongful, intending to burden and mislead

United and the IDRE and to extract money to which it was not entitled. Conduct "calculated to thwart the judicial process" is "more akin to malicious prosecution" and is excepted from the litigation privilege. *Id.* at 319.

Fundamental conceptual barriers aside, Sood bears the burden of demonstrating the litigation privilege applies and has failed to prove its elements. *See Alexander v. Hackensack Meridian Health*, 2020 WL 5810526, at *5-6 (D.N.J. Sept. 30, 2020).

***First***, as a threshold matter, Sood cannot invoke the protection of a process that it knew never applied to its claim. Compl. ¶¶ 53, 62-66. Sood's litigation privilege argument rests on a single communication: the August 25, 2025 attestation in which Gottlieb certified that the claim at issue was "within the scope of the Federal IDR process." Mot. at 22-24; Compl. ¶ 70. But that false attestation was not litigation advocacy; it was a threshold eligibility certification used to illegitimately *invoke* IDR and gain false entry to the process in the first instance. Compl. ¶ 70. The litigation privilege protects statements made *within* judicial or quasi-judicial proceedings; it does not shield false certifications made to *initiate* a proceeding the certifying party knows to be unavailable for the claim at issue. *See Williams*, 765 F.3d at 318-20 (litigation privilege does not protect conduct "calculated to thwart the judicial process").

***Second***, Sood's own characterization of its conduct undermines any claim to privilege. Sood describes the submission of the ineligible claim as an "error." Mot. at 35, 39. But one does not file a lawsuit or initiate a quasi-judicial proceeding in "error." That framing is itself an admission that Sood was not engaged in the kind of deliberate litigation advocacy the privilege was designed to protect. *See Williams*, 765 F.3d at 318-20. A party cannot simultaneously claim it was making a protected litigation communication while characterizing that same communication as a "clerical" mistake. Moreover, Sood's litigation privilege argument is internally inconsistent with its characterization of Gottlieb as a "billing contractor." The litigation privilege applies to statements made by "litigants or other participants authorized by law" in "judicial or quasi-judicial proceedings." *Williams*, 765 F.3d at 318. Sood's Motion describes Gottlieb as its independent "billing contractor," not its attorney or representative in a quasi-judicial matter. Mot. at 6-7, 30-31. A billing contractor submitting claims in "error" through an online administrative portal is not the type of litigation participant the privilege was designed to protect.[3]

---

[3] Sood's assertion that it "does not seek that its billing contractors submit to the IDR process any ineligible claims" is, as Sood itself recognizes, "premature." Mot. at 7. That argument is yet another example of Sood's internally inconsistent positions: if Gottlieb is a contractor "who specialize[s] in handling medical billing and appeals," *id.* at 31, then Sood cannot excuse the submission of a categorically ineligible claim as mere inadvertent error; if Gottlieb is instead an attorney authorized to act on Sood's behalf, then Sood's attempt to shield itself from liability is equally unavailing, and raises questions about Gottlieb's failure to uphold its ethical

***Third***, Sood bears the burden of proving that the IDR process qualifies as a quasi-judicial proceeding, and it has failed to carry that burden. *Alexander*, 2020 WL 5810526, at *5-6. Under *Zagami, LLC v. Cottrell*, courts look to "the presence of such procedural safeguards as notice, hearing, neutrality, finality, and review" to determine if a proceeding is quasi-judicial. 957 A.2d 691, 697 (N.J. Super. Ct. App. Div. 2008). At the motion to dismiss stage, this Court must accept United's factual allegations as true, not Sood's characterizations, and United's Complaint alleges that the IDR process lacks any of these safeguards:

- There is no hearing or adversarial engagement, only sealed, baseball-style portal submissions the opposing party never sees, Compl. ¶ 43;
- There is no neutral government decision-maker; instead, the process is run by for-profit entities compensated only when they resolve claims on the merits, creating a structural incentive to accept ineligible claims, *id.* ¶¶ 83-86; and
- There is no meaningful appellate review of IDR awards (the only recourse is asking the same IDRE to self-correct its own error), *id.* ¶¶ 75, 92.

By contrast, in every case Sood cites, the proceeding at issue had a hearing before a neutral adjudicator and an opportunity for appeal. *See Zagami*, 957 A.2d at

---

obligations. *Cf. Andreotta v. Renegade RV*, 2021 WL 838336, at *2 (D.N.J. Mar. 4, 2021) ("[C]lients are 'accountable for the acts and omissions of their attorneys.'").

698; *Ryan v. N.J. State Bd. of Nursing*, 2016 WL 3533997, at *6-7 (D.N.J. June 28, 2016); *Gasperetti v. Deborah Heart & Lung Ctr.*, 2017 WL 5619212, at *10 (N.J. Super. Ct. App. Div. Nov. 22, 2017). Sood's arbitration cases are also inapplicable because the District of New Jersey has already found that IDR is not akin to traditional arbitration. *See Complete Med. Wellness LLC v. Horizon Blue Cross Blue Shield of N.J.*, 2025 WL 3443620, at *6 (D.N.J. Dec. 1, 2025); *Interventional Pain Mgmt. v. Horizon Blue Cross Blue Shield of N.J.*, 2025 WL 3470569, at *6 (D.N.J. Dec. 3, 2025).

Shielding Sood's fraud would convert the litigation privilege into a license to deceive, undermine Congress's intent to protect the NSA's integrity, and extend quasi-judicial protections to an improperly initiated process that offers none of the safeguards required to earn them.

## III. SOOD'S FRAUD ARGUMENTS ARE WITHOUT MERIT

### A. United Has Satisfied Rule 9(b)'s Heightened Pleading Standard

United's Complaint satisfies Rule 9(b)'s heightened pleading standard, as Sood itself concedes. *See* Mot. at 32 ("**The August 25, 2025 IDR Claim.** The Complaint only identifies with particularity a single IDR claim."). That concession should end the inquiry. Sood nevertheless contends that the Complaint is deficient because it fails to identify certain information about the "more than 170 claims" referenced therein. *Id.* at 27-28. This is a red herring. The Complaint's 170-claim

reference provided context for Sood's use of the IDR process and was not an assertion that each claim was individually fraudulent. Compl. ¶ 5 ("Sood has initiated over 170 disputes against United since January 1, 2025, including disputes that were ineligible for NSA IDR, like the claim described herein.").

In any event, United's Complaint satisfies the "who, what, when, where and how" framework that Sood's own Motion identifies as the governing standard.

- ***"[T]he date a specific claim was submitted to IDR."*** Mot. at 28. The Complaint alleges that "on August 25, 2025, Sood initiated an IDR dispute, through its agent Gottlieb & Greenspan, LLC." Compl. ¶ 67.
- ***"[T]he identity of the underlying patient."*** Mot. at 28. The Complaint identifies the patient as "a 92-year-old" who received "a transforaminal epidural injection" at "Union Ambulatory Surgical Center in Union, New Jersey" on April 17, 2025. Compl. ¶¶ 53-54.[4]
- ***"[T]he date when Sood Medical rendered healthcare services."*** Mot. at 28. The Complaint alleges that "[o]n April 17, 2025, the patient received a transforaminal epidural injection at Union ASC." Compl. ¶ 54.

---

[4] Although United did not state the name of the patient in its public filing, the patient is identified with sufficient particularity to allow Sood, who rendered the services, to identify the patient.

- ***"[W]hich of Sood Medical's contractors submitted the challenged claim."*** Mot. at 28. The Complaint identifies Gottlieb, a "law firm with offices in Fair Lawn, New Jersey," Compl. ¶¶ 67-68, and the individual attorney who signed the fraudulent attestation: James Greenspan, Esq., *id.* ¶ 70.
- ***"[W]hat is the basis for UHS's assertion that the specified claim was ineligible for the IDR process."*** Mot. at 28. The Complaint explains that Medicare Advantage claims are ineligible for NSA IDR. Compl. ¶¶ 49-50.
- ***"[H]ow UHS believes Sood Medical had knowledge that specific claim was ineligible for the NSA IDR process."*** Mot. at 28. The Complaint alleges multiple bases for Sood's knowledge, including that: (a) Sood requested prior authorization from United, and United's April 15, 2025 approval letter informed Sood the patient was covered by a United Medicare plan; (b) the patient's insurance card clearly identified the patient as a Medicare Advantage enrollee; (c) United's PRA, received by Sood in June 2025, was printed on "UnitedHealthcare Medicare Solutions" letterhead; and (d) CMS resources clearly state that "[t]he Federal IDR process does not apply to items and services payable by Medicare." Compl. ¶¶ 50, 53, 55-57, 61-66.

In short, every purported deficiency in Sood's bulleted list is squarely addressed by the Complaint. Sood's Rule 9(b) argument is refuted by the very Motion raising it.

### B. Sood's Litigation Privilege and Agency Defenses Are Internally Inconsistent

Sood's litigation privilege argument is internally inconsistent with its agency defense, and the Court should hold Sood to its election. To invoke the litigation privilege, Sood must establish that Gottlieb was a "litigant or other participant authorized . . . to achieve the objects of the litigation." Mot. at 23-24; *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 523 (D.N.J. 2012). Sood expressly argues that Gottlieb was "authorized" to make the attestation on Sood's behalf. Mot. at 24. But elsewhere in the same Motion, Sood disavows agency, arguing that Gottlieb is an "independent contractor" for whom Sood bears no responsibility. *Id.* at 30-31, 35. Sood cannot have it both ways, and at minimum has set up a factual dispute of its own making that cannot be resolved on a motion to dismiss.

If Gottlieb was "authorized" to act on Sood's behalf—as Sood must contend to satisfy the litigation privilege's elements—then Gottlieb was Sood's agent, and Sood is vicariously liable for Gottlieb's fraudulent attestation. *See JNL Mgmt., LLC v. Hackensack Univ. Med. Ctr.*, 2019 WL 1951123, at *11 (D.N.J. May 2, 2019) ("It is clear that an attorney acts as an agent for his client." (quoting *Hewitt v. Allen Canning Co.*, 728 A.2d 319, 322 (N.J. Super. Ct. App. Div. 1999))); *Robins v.*

*Robins-McCafferty*, 2015 WL 6951693, at *3 (D.N.J. Nov. 9, 2015) ("An attorney is a fiduciary of his client.").[5] If Gottlieb was *not* authorized to act on Sood's behalf—as Sood argues in resisting agency liability—then the litigation privilege does not apply, because Sood cannot satisfy the "authorized participant" element. Either way, Sood's defense fails.

Sood's assertion that there are "no substantive facts addressing the extent and nature of [Sood's] relationship with Gottlieb," Mot. at 31, is doubly flawed. First, the Complaint plainly alleges that Gottlieb is a law firm that "represents healthcare providers," initiated the IDR proceeding as "representative" of Sood, and acted "on behalf of [Sood]," thereby adequately pleading agency. Compl. ¶¶ 67-70, 94, 106. Second, Sood's own Motion sets forth facts sufficient to support agency: Sood concedes that it "hired" Gottlieb "to review, file and handle all NSA IDRs," and that Gottlieb was "authorized" to make the attestation on Sood's behalf. Mot. at 24, 31. A principal is vicariously liable for its agent's fraud regardless of knowledge; Sood cannot escape liability by scapegoating its own agent.

[5] Accordingly, Sood's reliance on *Migliore v. Vision Solar LLC*, 160 F.4th 79 (3d Cir. 2025), a case that analyzed the plausibility of agency allegations as to a salesman, rather than an attorney, is unavailing.

### C. **<u>Sood's False Attestation of Eligibility Was a Misrepresentation of Fact</u>**

Sood's attestation was a material misrepresentation of fact. When Sood certified that the claim was "within the scope of the Federal IDR process," Compl. ¶ 4, that attestation necessarily implied that the patient was insured under a commercial insurance plan rather than a Medicare plan. That implication was an affirmative representation of fact regarding the patient's insurance status and the claim's eligibility for IDR. Sood made that representation with full knowledge that the claim was ineligible for NSA IDR. A knowing misrepresentation of a material fact is the essence of fraud. Sood cannot hide behind any "to the best of my knowledge" qualifier in the attestation form. Sood had actual knowledge of the patient's Medicare status through, among other things, the prior authorization letter and United's PRA printed on Medicare Solutions letterhead. *Id.* ¶¶ 53, 61-66.

Sood's attempt to distinguish between "eligibility" and "qualification," Mot. at 34-35, is also meritless. Medicare claims are categorically excluded from NSA IDR. *See* 42 U.S.C. § 300gg-111(c)(1)(A)-(B); CMS, Federal IDR Process Guidance for Certified IDR Entities at 7 (Dec. 2023). By attesting that the claim was within the IDR process's scope, Sood necessarily represented that the patient was not a Medicare beneficiary. That representation was false. Whether framed as

"eligibility" or "qualification," the attestation falsely represented that the claim belonged in the IDR process when it plainly did not.[6]

**D. United Has Adequately Alleged Reliance**

United justifiably relied on Sood's certification. When Sood, through Gottlieb, submitted the attestation and triggered United's mandatory participation in the IDR process, United had no choice but to respond or face a default judgment. That participation was not a voluntary "elect[ion] to litigate," Mot. at 37-38; once triggered, United was required to respond to the dispute and incur the IDRE fee and non-refundable administrative fee. Compl. ¶¶ 108, 111. Sood's argument that United cannot show reliance because United "knew all along the claim was ineligible," Mot. at 36-37, mischaracterizes the nature of the reliance.

If accepted, Sood's argument would immunize *every* provider for *every* claim they submit, as, under Sood's logic, insurers necessarily know whether a claim is eligible for IDR. Under Sood's theory, providers and their agents need not make any independent attempt to vet the claims they submit to NSA IDR and can submit even those claims they know are ineligible, leaving insurers and IDREs to do their work for them. That absurd result is not what Congress intended when it expressly

---

[6] Sood's argument, raised in a footnote, that Medicare Advantage claims may be eligible for IDR, Mot. at 35 n.39, only further reinforces that the issues in this lawsuit are "actually disputed." *See supra* Section I.A.

provided that IDR awards are binding only "in the absence of a fraudulent claim or evidence of misrepresentation." 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I).

Sood's reliance on *Applebaum v. Fabian*, 2021 WL 5833454 (D.N.J. Dec. 9, 2021), fares no better. In *Applebaum*, the plaintiff alleged that the defendants "defrauded or attempted to defraud" other parties, and the court concluded that those alleged frauds "did nothing to injure plaintiff." *Id.* at *10 n.8. Here, Sood's attestation directly injured United by triggering the mandatory IDR process and the associated fees. Compl. ¶¶ 108, 111.

**E. <u>United Has Adequately Alleged Damages</u>**

United has adequately alleged damages directly caused by Sood's fraud. The administrative and IDRE fees United was compelled to pay constitute compensable damages. But for Sood's fraudulent initiation of the IDR process, United would not have been forced to pay mandatory fees imposed by an inapplicable federal regulatory scheme. *Id.* ¶¶ 83, 101, 104, 111. United seeks restoration to the position it would have occupied had Sood not perpetrated this fraud, free from the $115 administrative fee and IDRE fee United has already paid. *See Material Damage Adjustment Corp. v. Open MRI of Fairview*, 799 A.2d 731, 741 (N.J. Sup. Ct. Law Div. 2002) ("The goal of compensatory damages is to restore the plaintiff to the same position it was in prior to the occurrence of the wrong.").

Contrary to Sood's assertion, the non-refundable administrative fee and IDRE fee are not "ordinary transactional cost[s] of dispute resolution" that United "assumed" the risk of paying when it "elect[ed] to litigate." Mot. at 37-38. United did not "elect" to initiate IDR for this dispute; Sood's wrongful conduct forced United into a non-consensual, inapplicable process. *See Interventional Pain Mgmt.*, 2025 WL 3470569, at *6.

Sood's remaining argument that it "has received no economic benefit from that IDR," Mot. at 37, is a red herring. The focus of fraud is on the defendant's conduct and its effect on the plaintiff, not on any gain accruing to the defendant. *See Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005). United has adequately alleged damages resulting from Sood's fraud.

## IV. UNITED IS ENTITLED TO INJUNCTIVE RELIEF, DECLARATORY RELIEF, PUNITIVE DAMAGES, AND ATTORNEYS' FEES

United is entitled to the injunctive, declaratory, and monetary relief it seeks, and Sood's motion to dismiss these claims should be denied.

***Injunctive and Declaratory Relief.*** Sood fundamentally misconstrues the scope of United's claims for declaratory and injunctive relief. Mot. at 38-39. United does not seek to exempt itself "from the law" or claim blanket immunity from all IDR awards. *Id.* at 39. Rather, United's requested relief is narrowly targeted at claims expressly excluded from the IDR process, *e.g.*, Medicare and Medicaid claims. *See* Compl. ¶¶ 98-100. Unlike the "overbroad" relief Sood characterizes,

Mot. at 39, United seeks only to establish that Sood cannot fraudulently attest to eligibility for claims that are categorically ineligible for NSA IDR.

***Punitive Damages.*** The Complaint adequately pleads the requisite malice for punitive damages under New Jersey law. *See Hrymoc v. Ethicon, Inc.*, 297 A.3d 1245, 1263 (N.J. 2023) (setting forth the applicable standard). The Complaint alleges that Sood *knowingly* submitted a categorically ineligible Medicare claim to the IDR process, despite having received clear documentation indicating that the patient was enrolled in a Medicare Advantage plan. Compl. ¶¶ 50, 53, 55-57, 61-66. This deliberate submission of a false attestation, with knowledge that the claim was ineligible, supports a finding of "actual malice" or "wanton and willful disregard" under New Jersey's Punitive Damages Act. *See Miles Tech., Inc. v. Apex I.T. Grp., LLC*, 2013 WL 1352024, at *4-5 (N.J. Super. Ct. App. Div. Apr. 5, 2013) (affirming award of punitive damages arising from fraudulent letter from defendant's counsel).

In any event, dismissal of punitive damages claims at the motion to dismiss stage is "generally premature." *Hernandez v. City of Paterson*, 2023 WL 6876008, at *12 (D.N.J. Oct. 18, 2023). Whether punitive damages are warranted is more appropriately resolved after discovery has been completed and the full scope of Sood's conduct is established.

***Attorneys' Fees.*** Sood's motion to dismiss United's request for attorneys' fees is similarly premature. United's Complaint properly includes a request for

attorneys' fees, and whether such fees are ultimately recoverable is a question that should be addressed after the merits have been resolved.

## V. SOOD HAS FORFEITED ITS CONCLUSORY AND UNDEVELOPED ARGUMENTS

Sood has forfeited several of its arguments by raising them only in footnotes, only in passing, or only as conclusory assertions without development. "[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997); *see also 24-7 Prestige Transp. & Courier Servs., LLC v. Jersey Drive Servs., LLC*, 2026 WL 1878691, at *3 (D.N.J. June 30, 2026) ("[A]n argument consisting of no more than a conclusory assertion . . . will be deemed waived." (quoting *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997))). Accordingly, the following arguments are waived and, in any event, meritless:

- ***Grable* Jurisdiction.** As explained in Section I.A, *supra*, United's claim independently satisfies *Grable* jurisdiction.
- **SLAPP Lawsuit.** Without development, Sood asserts that "[t]his is one of the industry's SLAPP lawsuits." Mot. at 3. But Sood did not move to dismiss under any anti-SLAPP statute, and it is *Sood* that is abusing the NSA process by submitting plainly ineligible claims. Compl. ¶¶ 4-6.
- **Necessary Parties.** Sood asserts that United "failed to join necessary parties, *e.g.*, CMS and Keystone." Mot. at 39 & n.42. But Sood nowhere

explains how CMS or the IDRE are necessary to this fraud action challenging only *Sood*'s conduct. This Court can grant the requested relief among the existing parties without CMS's or the IDRE's participation.

- **Sovereign Citizen Argument.** Sood's claim that United seeks "exempt[ion] from the law," *id.* at 39, is baseless. United seeks to *enforce* legal protections against Sood's fraudulent abuse of the NSA IDR process. Compl. ¶¶ 5-6.

In sum, Sood's undeveloped arguments provide no basis to dismiss the Complaint and should be disregarded.

## VI. LEAVE TO AMEND MUST BE GRANTED IF DEFICIENCIES EXIST IN THE COMPLAINT

If the Court identifies any deficiencies in the Complaint, United is entitled to leave to amend. This is United's first Complaint, and leave to amend should be freely given. Fed. R. Civ. P. 15(a)(2); *see Gen. Motors Corp. v. United States*, 2005 WL 548266, at *3-4 (D.N.J. Mar. 2, 2005) (observing that "[c]ourts within the Third Circuit apply a very liberal standard in considering whether to grant leave to amend a complaint" and granting such leave even where "[a]mple reasons exist[ed]" to conclude that doing so "would be futile under controlling Third Circuit law"). Even if this Court were to credit Sood's jurisdictional arguments, "dismissal for lack of subject matter jurisdiction must be without prejudice." *Filippatos v. United States*,

2025 WL 3765407, at *4 n.10 (D.N.J. Dec. 30, 2025) (quoting *Talley v. United States*, 2014 WL 282680, at *3 (D.N.J. Jan. 24, 2014)).

## CONCLUSION

For the foregoing reasons, United respectfully requests that this Court deny Sood's Motion to Dismiss in its entirety.

Dated: August 7, 2026

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: */s/ Blake T. Denton*

Blake T. Denton (N.J. Bar No. 029002008)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
blake.denton@lw.com

David C. Tolley (*pro hac vice*)
William J. Trach (*pro hac vice*)
U. Gwyn Williams (*pro hac vice*)
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
david.tolley@lw.com
william.trach@lw.com
gwyn.williams@lw.com

*Attorneys for Plaintiff*
*United Healthcare Services, Inc.*