# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED HEALTHCARE SERVICES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SOOD MEDICAL PRACTICE, LLC,<br><br>Defendant. | Case No. 2:26-cv-02921<br><br>Before:<br>Hon. Susan D. Wigenton, U.S.D.J.<br>Hon. Cari Fais, U.S.M.J.<br><br>Motion Day: September 8, 2026 |

# DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Eric D. Katz | NJ Atty. No. 016791991
David M. Estes | NJ Atty. No. 034532011
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
P: 973-228-9898
F: 973-228-0303
E: ekatz@mazieslater.com
destes@mazieslater.com
*Counsel to Defendant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

REPLY ........ 1

**I. THERE IS NO JURISDICTION** ........ 3

**II. THE COMPLAINT FAILS TO STATE A CLAIM** ........ 10

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Cases** **Pgs.**

*Anthem Blue Cross Life & Health Ins. v. HaloMD*, 2026 WL 982629 (C.D. Cal. Apr. 9, 2026) (“***Anthem***”) ....................1,6,15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (“***Iqbal***”) ....................2,8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (“***Twombly***”) ....................2,8

*Blue Cross Blue Sh. Healthcare Plan of Ga. v. HaloMD*, 2026 WL 2017291 (N.D. Ga. July 10, 2026) (“***Blue Cross Ga***.”) ....................*passim*

*Blue Cross Blue Sh. of Tex. v. HaloMD*, 2026 WL 1557492 (E.D. Tex. May 22, 2026) (“***Blue Cross Tex***.”) ....................*passim*

*Brotherhood Ry. Carmen, Div. of Transp. Comms. Int’l Union (TCU) v. CSX Transp., Inc.*, 855 F.2d 745 (11th Cir. 1988) ....................8

*Campbell v. Doe*, 2018 WL 4616068 (D.N.J. Sept. 26, 2018) (**Wigenton**, J.) ....................7

*Carroll v. Compr. Healthcare Mgmt. Servs. LLC*, 2024 WL 1693864 (3d Cir. Apr. 19, 2024) ....................4

*Casatelli v. Horizon Blue Cross Blue Sh. of N.J.*, 2010 WL 3724526 (D.N.J. Sept. 13, 2010) (**Wigenton**, J.) ....................7

*City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022) ....................9

*DeGennaro v. Grabelle*, 2021 WL 5445809 (3d Cir. Nov. 22, 2021) ....................7

*Grable & Sons Metal Prods., Inc. v. Darue Eng’g & Mfg.*, 545 U.S. 308 (2005) (“***Grable***”) ....................*passim*

*Gunn v. Minton*, 568 U.S. 251 (2013) (“***Gunn***”) ....................3,5,6

*In re Ortho. “Bone Screw” Prods. Liab. Litig.*, 132 F.3d 152 (3d Cir. 1997) ....................3

*Kalick v. Nw. Airlines Corp.*, 372 F. App'x 317 (3d Cir. 2010) ...............................4

*Klotz v. Celentano, Stadtmauer & Walentowicz, LLP*,
2019 WL 3712123 (D.N.J. Aug. 7, 2019) (**Wigenton**, J.),
*aff'd*, 991 F.3d 458 (3d Cir. 2021) .......................................................................15

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004) ..................................................8

*Manning v. Merrill Lynch Pierce Fenner & Smith, Inc*,
772 F.3d 158 (3d Cir. 2014), *aff'd*, 578 U.S. 374 (2016).......................................5

*Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377 (D. Del. 2012) ..............................8

*MHA, LLC v. HealthFirst, Inc.*, 629 F. App'x 409 (3d Cir. 2015) ...........................5

*Migliore ex rel. Migliore v. Vision Solar, LLC*, 160 F.4th 79
(3d Cir. 2025), *cert. denied*, No. 25-1194 (U.S. June 15, 2026) ..........................14

*Union R. Co. v. United Steelworkers of Am.*, 242 F.3d 458
(3d Cir. 2001) ..........................................................................................................8

*UnitedHealthcare Ins. v. Maui Mem'l Emer'y Med. Assocs.*,
2026 WL 1965882 (D. Haw. July 7, 2026) ("***Maui***") ..................................*passim*

*UnitedHealthcare of Pa. v. NorthStar Anesth. of Pa.*, 2026 WL
1145885 (E.D. Pa. Apr. 28, 2026) ("***NorthStar***") ........................................*passim*

*Williams v. ProMedica Health Sys. Inc.*, 2024 WL 4927258
(3d Cir. Dec. 2, 2024) ...................................................................5,10,11,12

*Zagami v. Cottrell*, 403 N.J. Super. 98 (App. Div. 2008), *certif. denied*, 198 N.J. 309 (2009) .........................................................................10

**Statutes**

Federal Arbitration Act ("**FAA**"), 9 U.S.C. § 10(a) ........................................2,7,11

No Suprises Act ("**NSA**"), 2 U.S.C. § 300gg-111, *et seq.* ...............................*passim*

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................13

Fed. R. Civ. P. 19(a) ...................................................................................9

**Regulations**

26 C.F.R. § 54.9816-8T(a)(2)(xi)[1] ..........................................................2,13

26 C.F.R. § 54.9816-8T(c)(1)(iii)-(iv)[2] ....................................................2,14

**Other Authority**

U.S. Constitution, Article III.........................................................................2,3,6,7

---

1 *Texas Med. Ass'n v. U.S. Dep't of Health & Human Servs. ("**HHS**")*, 2023 WL 4977746 (E.D. Tex. Aug. 3, 2023) (invaliding unrelated subparts of regulation).

2 *Texas Med. Ass'n v. U.S. Dep't of Health & Human Servs.*, 2023 WL 4977746 (E.D. Tex. Aug. 3, 2023) (invaliding unrelated subparts of regulation).

# **REPLY**

Defendant Sood Medical Practice submits this reply in further support of its Motion to dismiss the Complaint of Plaintiff United Healthcare Services ("**UHS**").

As Mr. Sandburg famously quipped: "If the facts are against you, argue the law. If the law is against you, argue the facts. If the law and the facts are against you, pound the table and yell like hell." Here, **every court** to hear one of these copycat "NSA fraud" actions **has dismissed** it.[3] And now that Plaintiff confessed that its reference to Sood Medical's "170 IDRs" was just for "context" and "[t]his case is about a single … claim" (D.E. 35, at 29,6), the facts for this Motion are simple:

1. Sood Medical contracts with Mr. Greenspan to handle its NSA IDR matters.
2. Mr. Greenspan raised to UnitedHealthcare Ins. Co. the subject claim, initiating the 30-day NSA window to negotiate in good faith.
3. There is no allegation that United raised eligibility during the 30-day window.
4. After the negotiation window, Mr. Greenspan initiated the IDR action.
5. With that filing, Mr. Greenspan submitted the subject "attestation" stating to the IDRE, Keystone that the subject claim "qualifies" for the NSA IDR.
6. CMS regulation and publications define "qualification" as whether the type of medical services rendered fall within the scope of the NSA program.
7. Before the IDR proceeding, the responding party is to address "eligibility."
8. Plaintiff's Complaint defines "eligibility" as whether the types of health insurance or plan fall within the scope of the NSA program.

---

[3] *UnitedHealthcare of Pa. v. NorthStar Anesth. of Pa.*, 2026 WL 1145885 (E.D. Pa. Apr. 28, 2026) ("***NorthStar***"); *UnitedHealthcare Ins. v. Maui Mem'l Emer'y Med. Assocs.*, 2026 WL 1965882 (D. Haw. July 7, 2026) ("***Maui***"); *Anthem Blue Cross Life & Health Ins. v. HaloMD*, 2026 WL 982629 (C.D. Cal. Apr. 9, 2026) ("***Anthem***"); *Blue Cross Blue Sh. of Tex. v. HaloMD*, 2026 WL 1557492 (E.D. Tex. May 22, 2026) ("***Blue Cross Tex.***"); *Blue Cross Blue Sh. Healthcare Plan of Ga. v. HaloMD*, 2026 WL 2017291 (N.D. Ga. July 10, 2026) ("***Blue Cross Ga.***").

**9.** There is no allegation that pre-IDR United timely challenged eligibility.
**10.** Later, during the IDR proceeding, United submitted a conclusory letter stating the claim was ineligible, but it did not submit any proof to the IDRE.
**11.** Because the IDR is baseball-style arbitration, and United's offer was $0.00, Keystone selected the amount proposed by Sood Medical.
**12.** Because United lost the IDR, it was required to pay a fee <u>to Keystone</u>.
**13.** Post-IDR proceeding, a responding party can correct eligibility.
**14.** There is no allegation that United "reopened" the IDR to get the fee United paid to Keystone, or details on the status or outcome of its appeal to CMS.
**15.** There is no allegation Sood Medical was paid or is enforcing that award.
**16.** If an NSA IDR award is fraudulent, United can vacate under the FAA.[4]

These 16 facts neither state a claim under New Jersey law, nor establish federal jurisdiction. And so, Plaintiff pounds the table. Its opposition repeats "fraud" or "fraudulent" 76 times, and "constitutional right" or similar phrase 13 times, while disparaging the NSA, CMS, IDREs, and a parade of horribles. None of this can deflect from its inability to satisfy *Twombly-Iqbal*. Legal jargon is no substitute for factual content. Non-party Mr. Greenspan's attestation to non-party Keystone that services "qualified" for an IDR against non-party United Healthcare Ins. Co. does <u>not</u> support a fraud claim by Plaintiff UHS against Defendant Sood Medical. United had 4 opportunities during the IDR process to litigate "eligibility," which it

---

[4] *See* **Nos. 1:** D.E. 1, at ¶¶ 67-69; **2:** D.E. 1, at ¶¶ 42, D.E. 33-2, at ¶ 3 & n.1; **3:** D.E. 1, at ¶¶ 67-72; **4:** D.E. 1, at ¶ 67; **5:** D.E. 1, at ¶¶ 69-70; **6:** D.E. 1, at ¶ 69; D.E. 33-1, at 34 n.38; 26 C.F.R. § 54.9816-8T(a)(2)(xi); **7:** D.E. 1, at ¶¶ 80, 84; 26 C.F.R. § 54.9816-8T(c)(1)(iii)-(iv); **8:** D.E. 1, at ¶¶ 17, 41, 43; D.E. 33-1, at 34 n.36; **9:** D.E. 1, at ¶¶ 67-70, 80, 84; **10:** D.E. 1, at ¶¶ 71-76; D.E. 33-2, at ¶¶ 6-8 & n.1; **11:** *id.*; **12:** D.E. 1, at ¶¶ 83, 111; D.E. 1-3, at § VII; D.E. 33-2, at ¶¶ 1-8, n.1; **13:** D.E. 33-1, at 15-16, 18 & n.25; **14:** D.E. 1, at ¶ 76; D.E. 33-2, at ¶¶ 9-12, n.2; **15:** D.E. 1, at ¶ 111; D.E. 33-1, at 7; and **16:** D.E. 33-1, at 17-21,9,25-27.

neglected. Sood Medical did not cause United to incur an arbitrator fee. This collateral attack on an arbitration judgment should be dismissed with prejudice.

**I**. **THERE IS NO JURISDICTION**. Plaintiff has not carried its burden. "A federal court can only exercise that power granted to it by Article III of the Constitution and by the statutes enacted pursuant to [it]. If a case, over which the court lacks subject matter jurisdiction, was originally filed in federal court, it **must** be dismissed." *In re Ortho.*, 132 F.3d 152, 155-56 (3d Cir. 1997).[5] Every court faced with these cookie-cutter health insurer SLAPP suits against providers has found no jurisdiction. In *NorthStar* involving the same United complaint filed by the same attorneys as here, Judge Kearney in Philadelphia recently held:

> UnitedHealthcare does not plead facts allowing us to plausibly infer its common law fraud claim comes within the 'special and small category' of cases giving rise to federal jurisdiction under Supreme Court precedent…. UnitedHealthcare's common law fraud claim seeking money damages and declaratory and injunctive relief does not fit within our limited subject matter jurisdiction absent a federal question…. [United's] claim can only "arise under the Constitution, laws, or treaties of the United States" if the "state-law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." The Supreme Court in two cases–[*Grable*] and [*Gunn*]–developed a four-part test…. All four prongs of the *Grable*/*Gunn* test must be met…. Only a "**slim category**" of cases asserting state-law claims satisfy the *Grable*/*Gunn* test…. We conclude UnitedHealthcare does not meet the first and third elements of the test required for federal question jurisdiction.

---

[5] In this reply brief, for all **quoted text** citations, quotation marks, brackets and footnotes are omitted, and any emphasis is added (unless otherwise indicated).

2026 WL 1145885, at *5-6. Here United makes the same arguments as in *NorthStar*:

> [The court] disagrees[d] a federal issue is necessarily raised in UnitedHealthcare's common law fraud claim. UnitedHealthcare argues the question of whether NorthStar's false attestation 'constitutes fraud' necessarily requires our construction of the [NSA]. But there is no dispute the Act does not apply to Medicare, Medicaid, and other federal insurance programs. UnitedHealthcare's common law fraud claim does not necessarily depend on a resolution of the [NSA]. * * * UnitedHealthcare could have, but chose not to, pursue the defined remedy set by Congress under the Act. It instead elected to allege a common law fraud claim and bootstrap the common law claim into declaratory and injunctive relief with no federal jurisdictional basis. * * * [T]he [**NSA] provides a remedy** to challenge both fraudulent … and extrajurisdictional awards…. The [federal agencies] 'determined jurisdictional errors should be corrected by reopening a dispute to ensure compliance' with the [NSA's] requirements. We see no need for statutory interpretation as UnitedHealthcare argues.

*Id*. at *6-7. To make the motion record clear: Sood Medical does **not** dispute that "Medicare Advantage" plans are ineligible, nor did Sood Medical authorize its contractor to submit ineligible claims (D.E. 33-1, at 7).[6] In sum, United's identical complaint in *NorthStar* did not establish the 1st prong of the *Grable* test – which is consistent with Third Circuit jurisprudence.[7]

---

[6] Contrary to Plaintiff's claim, Defendant's footnotes on "Medicare Advantage" were only intended to flag that: (1) Plaintiff's IDR submission may have confused the IDRE, and (2) the sufficiency of its allegations in the Complaint.

[7] *Carroll*, 2024 WL 1693864, at *2 (3d Cir. Apr. 19, 2024) ("federal issue is not necessarily raised here because the … Act is not an essential element of any of the state-law claims"); *Kalick*, 372 F. App'x 317, 320 (3d Cir. 2010) ("it does not appear from Kalick's complaint that the interpretation of the federal regulation is in dispute, only whether NWA abided by the regulations. Kalick cannot simply cite to a federal regulation that does not give…a private cause…to satisfy … jurisdiction.").

Nor can Plaintiff establish the 3rd prong. "*Gunn* is clear that the bar for substantiality is high." *Williams*, 2024 WL 4927258, at *3 (3d Cir. Dec. 2, 2024).

> UnitedHealthcare's fraud claim does not fall within the narrow category of claims raising substantial federal issues. This is not a pure question of law…. We disagree with UnitedHealthcare's characterization its concern presents a question of law * * * UnitedHealthcare's argument **flips the facts** on their head…. The question is whether NorthStar knew the … claim is not eligible…. We are presented with a question of fact.

*NorthStar*, 2026 WL 1145885, at *8. *NorthStar*'s finding is supported by the Third Circuit.[8] Like *NorthStar*, in *Maui* Judge Watson held there is no *Grable* jurisdiction dismissing another United copycat complaint filed by the same attorneys as here:

> Upon review, there is nothing "significant" or, in the relevant parlance, "substantial" about any possible federal issues in this lawsuit. The alleged fraud here does not center on federal action and does not implicate federal revenue…. [T]he fraud dispute between the two private parties does not turn on the purported construction of the NSA. Instead, at most, the NSA implicates just one part of the fraud claim United would be required to prove, with the rest devoid of any federal interest. Further still, United's fraud claim ignores federal legislation that provides it with avenues of relief that do not include pursuing **a State law claim in federal court**. * * * [W]hile Maui Memorial appears to have the better of most, if not all, of the [*Grable* jurisdiction] disputes, the Court primarily addresses only one: United's failure to establish that a "substantial" federal issue is presented in this case…. However, **other than parroting the legal standard** … **United never explains how** these alleged issues are substantial…. For example, United never explains how these issues are at all comparable to the ones

8 *Manning*, 772 F.3d 158, 164 (3d Cir. 2014) ("even if Plaintiffs' claims were partially predicated on federal law, federal law would still not be necessarily raised") (emph. by Court); *MHA*, 629 F. App'x 409, 413 (3d Cir. 2015) ("Supreme Court has distinguished cases such as *Grable* that present a 'nearly pure issue of law'…, from those that are 'fact-bound and situation-specific.'").

> deemed substantial by the Supreme Court. Specifically, those "substantial" issues involved the construction of federal law and a federal treaty in quiet title actions, the federal government's compliance with federal law in another quiet title action, and the constitutionality of a federal statute authorizing federal bonds. <u>In contrast, the dispute here involves purely non-federal actors, no real property, no treaty, and no challenge to the constitutionality of a federal law</u>. Moreover, the alleged federal issue here – interpretation of the NSA – at best, concerns one part of United's fraud claim: whether a false representation was made. No other element of the fraud claim, of which there are several, even allegedly involves a federal issue or allegedly involves a "pure" question of law. <u>It, thus, strains reason to believe that this case "turns on" a federal issue, substantial or otherwise, **because it does not**</u>. In this light, <u>because there is **no precedent to support extending *Grable*** to the alleged issue(s) in this case, the Court declines to do so</u>.

*Maui*, 2026 WL 1965882, at *1, 4. In sum, "UnitedHealthcare d[oes] not cite authority to support the 'necessarily raised' or 'substantial' elements of the *Grable*/*Gunn* test in the context of the [NSA]. Our search of relevant authority did not find a decision from a federal court finding a state common law claim turns on substantial questions of federal law under the [NSA]." 2026 WL 1145885, at *9.

Other courts concur. *Anthem* held there is no jurisdiction for health insurers' "NSA fraud" claims, rejecting the same "no remedy" argument that United recycles here – which asks jurists to legislate from the bench. *Anthem*, 2026 WL 982629, at *2, 9-10[9]; *accord NorthStar*, 2026 WL 1145885, at *14 ("UnitedHealthcare's theory

---

[9] "NSA precludes [federal] judicial review of IDR determinations, <u>regardless of the legal theory</u> * * * [Health insurers] urge the Court not to apply the NSA's limits on judicial review because the IDR process is deeply flawed and <u>there is no readily available remedy</u>…. But <u>such policy-based arguments would be better directed at **Congress which alone has the power to rewrite the NSA**</u>. * * *

we should provide it a remedy because it has no adequate recourse under the [NSA] is **without merit**.").[10] Nor does United's "constitutional rights" mantra alter *Grable* jurisdiction. "State courts routinely adjudicate federal constitutional issues." *DeGennaro*, 2021 WL 5445809, at *2 (3d Cir. Nov. 22, 2021). Courts also rejected a distinction between an insurer's fraud action and a provider's enforcement action:

> [Insurer] argues that the NSA's limitation on judicial review only applies to an IDRE's payment *determination*, not *eligibility* determinations and therefore its claims outside of vacatur can proceed. * * * [T]he NSA empowers the Secretary [of HHS] to create regulations intended to establish an IDR process… As part of these regulations, the Secretary gave IDREs the power to review IDR initiation submissions and determine whether the IDR process can apply…. [T]he Court concludes that the NSA's limitation on [federal] judicial review applies **both** to payment determinations and eligibility determinations * * * [E]ven from a policy perspective, the [Insurer's] statutory interpretation argument fails…. If eligibility determinations were to be excluded from any judicial review limitation within the NSA, the losing party could simply run to the courts and attempt to subvert the IDRE's determination by mounting a **collateral attack**. Not

---

[Insurers'] claims cannot be adjudicated without reviewing the correctness of past IDR awards or inserting the district court in overseeing future IDR awards…. These theories are all end runs around the NSA's limits on [federal] judicial review." *Id*.

[10] **Failure to Exhaust**. Plaintiff tacitly concedes it did not exhaust the administrative remedies. *Cf. Maui*, 2026 WL 1965882, at *2 (United filed its admin. appeal "Apparently at or near the same time" it filed suit). Plaintiff argues it was excused. But the Third Circuit imposes exhaustion in the absence of a statute. (D.E. 33-1, at 16-17 n.24). United's made-up "constitutional right to Article III adjudication" does not excuse it from first exhausting. *Id*. The conclusory allegation at paragraph 76 falls short of the detail to plead futility. *Casatelli*, 2010 WL 3724526, at *6-8 (D.N.J. Sept. 13, 2010) (**Wigenton**, J.) (dismissing after "find[ing] Plaintiffs have not presented a clear and positive showing that efforts to follow the administrative appeals process would have been futile"); *Campbell*, 2018 WL 4616068, at *4 (D.N.J. Sept. 26, 2018) (**Wigenton**, J.) ("Plaintiff's failure cannot be excused simply because Plaintiff believed any further complaints would be futile.").

> only would this result in increased costs to the parties, but it would also defeat any notions of efficiency in the "baseball-style arbitration" that Congress envisioned…. [T]he NSA's limitation on [federal] judicial review applies to both eligibility and payment determinations.

*Blue Cross Ga.*, 2026 WL 2017291, at *7-9 (italics by Court); *accord Blue Cross Tex.*, 2026 WL 1557492, at *3, 6 (same).[11] To put a bow on it, every court to consider this national blitz of "NSA fraud" cases has held there is no federal jurisdiction to hear such actions, including at to United's duplicate claims in *NorthStar* and *Maui*.

The Complaint also lacks facts, under the *Twombly-Iqbal*, to link Sood Medical harming UHS. United Healthcare Services, Inc. ("**UHS**"), the Plaintiff, is a separate person from United HealthCare Ins. Co. ("**UHIC**"), the entity actually involved in the IDR. (D.E. 33-1, at 11-15). No correspondence relating to the IDR indicates UHS was involved. (D.E. 33-2, at ¶¶ 5-10).[12] In opposition, UHS claims *it* paid the $715 arbitration fee, citing paragraphs 71-73, 83 of the Complaint. That lacks candor. When those 4 paragraphs are actually read, they do not state UHS itself

---

[11] The Third Circuit has affirmed dismissal for lack of jurisdiction where a litigant collaterally attacked a judgment by a dispute resolution body. *Union R. Co.*, 242 F.3d 458, 466 n.9 (3d Cir. 2001), citing *Brotherhood Ry. Carmen*, 855 F.2d 745 (11th Cir. 1988) (dismissing "lawsuit is, in effect, a collateral attack on the arbitration award … rather than going through the normal [administrative] channels"); *e.g.*, *Marnavi S.p.A.*, 900 F. Supp. 2d 377, 395-96 (D. Del. 2012).

[12] The Declaration of Mr. Estes and 2 documents submitted to the Court (D.E. 33-2) merely are the award and correspondence from the IDR proceeding, which the Complaint distorts by partial quotes. *E.g.*, D.E. 1, at ¶¶ 71-72. Plaintiff's argument (D.E. 35, at 19-20) that those materials – which are expressly referenced in its Complaint – cannot be considered on this Motion is contradicted by Third Circuit in *Lum*, *see* D.E. 33-1, at 13 n.23. Nor has United disputed their authenticity.

paid the subject IDR fee with *its* money. There is an insufficient nexus (or traceability) between UHS and Sood Medical. This factual disconnect underscores that Plaintiff violated Rule 19(a) by failing to join necessary parties. (D.E. 33-1, 39 n.42).

Because Plaintiff lacks facts and law, it pounds the table about a so-called "constitutional right to judicial redress." (D.E. 35, at 17-18). Tellingly, Plaintiff can cite no authority for its made-up "right." Even when federal rights are at stake,

> Our federal system trusts state courts to hear most cases — even big, important ones that raise federal defenses…. [UHS] may prefer federal court, but [it cannot file its] cases [in] federal court **unless federal laws let them**. Here, …. [UHS] filed those suits … based only on state tort law. And there is no federal hook that lets [UHS into] federal court.

*City of Hoboken*, 45 F.4th 699, 705-06 (3d Cir. 2022). What is more, Plaintiff's "federal right" argument is nonsense because the Complaint contains no federal cause of action; it alleges Sood Medical violated state law. This pleading alleges violations of state law, and state courts have general jurisdiction to adjudicate New Jersey claims. *NorthStar*, 2026 WL 1145885, at *5 ("allow[ing] UnitedHealthcare to pursue its common law fraud claim … <u>in state court</u>"). For the reasons in the opening brief and here, the Complaint should be dismissed for lack of jurisdiction.[13]

[13] **<u>Alternatively</u>**: if *arguendo* this Court holds there is *Grable* jurisdiction, then it should make clear this is a two-way street. If *Grable* creates a federal hook for United's NSA-related claims, then such jurisdiction would equally open the courtroom doors to healthcare providers to bring their NSA-related claims in federal forums. There could be no other equitable or rational conclusion. And if the Court goes that route, its Order should make clear that Sood Medical can file with its Answer any counterclaims to enforce payment on any unpaid, eligible NSA awards.

**II**. **<u>THE COMPLAINT FAILS TO STATE A CLAIM</u>**. All of Plaintiff's claims arise from Mr. Greenspan "attestation" in furtherance of and in connection with the subject IDR. (D.E. 33-1, at 22-27). The litigation privilege exists so that a representative can advocate freely during a litigation without concern that her client will be collaterally attacked after judgment for something that occurred in the prior action – precisely what is happening here. In opposition, Plaintiff challenges elements 1 and 2 of the privilege, and also argues for the *Williams* exception.

All three arguments lack merit. It is well settled that pleadings, initiating filings and even pre-suit correspondence are within the scope of the privilege. (D.E. 33-1, at 23-26 & n.32) When the *Zagami* factors are applied to the facts alleged in the Complaint, it is clear that an NSA IDR is a *quasi* judicial proceeding subject to the privilege. (D.E. 33-1, at 23-27); *Blue Cross Tex.*, 2026 WL 1557492, at *2 (describing **NSA IDRs as "quasi-judicial** (*e.g.*, arbitration) proceedings"). By definition, NSA IDR is adversarial. The lack of an in-person hearing is no more relevant than federal courts' common practice of deciding a dispositive motion "on the papers." IDREs are qualified and certified by CMS, and no factual allegation in the Complaint shows Keystone was biased. The underlying ruling here was based on United's failure to submit timely proof the claim was ineligible. *See* fn.15, *infra*. And United has the remedy of appealing any bias to CMS. (D.E. 33-1, at 9,14-18); *see Blue Cross Ga.*, 2026 WL 2017291, at *25 ("Plaintiff [insurer] pled itself out of

Court by acknowledging that it had the opportunity to object to these [alleged] misrepresentations before the IDRE."). Nor the fact that an arbitrator is paid for her work evidence of bias. An IDRE is paid the same statutory fee regardless of who wins. There are no facts alleged supporting Plaintiff's conjecture that a CMS appeal is not "meaningful"; the NSA permits all respondents to file an FAA *vacatur* of a "fraudulent" award; and the privilege applies to arbitrations, with limited appeal rights. (D.E. 33-1, at 17-21,9,25-27); *Blue Cross Tex.*, 2026 WL 1557492, at *7 (insurer "exaggerates the distinction between IDR … and arbitration.").

As to the second element, Plaintiff disputes whether Mr. Greenspan is an attorney or "billing contractor." This is a red herring. Mr. Greenspan's words are the sole basis of Sood Medical's liability in the Complaint. Plaintiff cannot escape its own allegation, which satisfies the 2nd element: the person who made the statement falls withing "other participants authorized" to speak for a litigant.

At bottom, Plaintiff grasps for the *Williams* exception. But the facts there are inapposite. In *Williams*, an asbestos manufacturer "anticipated" there would be asbestos litigation in the future, so before being sued it circulated a "memorandum direct[ing its] employees to collect for discard documents relating to Emtal talc." 765 F.3d 306, 313 (3d Cir. 2014). Then, it "**manufactured** favorable evidence with [law firm] Cahill's help …. that contained false or misleading information…." *Id*. The Third Circuit declined to apply the privilege there because those defendants had

"engineered the false statements and evidence in **advance** of litigation. Then … deployed their **prefabricated** defense against claimants as they arose." *Id*. at 319. The *Williams* exception applies to a multi-jurisdiction, decades-long fraud across numerous cases that precluded the normal judicial safeguards and remedies. *Id*. at 318-19. The "thwart the judicial process" exception applies in the extreme, sprawling circumstances: defrauding hundreds of asbestos injured plaintiffs of a remedy by pre-litigation spoliating evidence and making-up fake proofs. By contrast, here the only "fraud" pleaded with particularity is a single attestation by Mr. Greenspan that allegedly resulted in damages of a $715 arbitrator fee. There is no dispute that Plaintiff has not paid 1¢ to Sood Medical on the subject award. If a bitter litigant can collaterally sue its opponent for an attorney's alleged "error" in a certification, it will chill the small guy's willingness to bring claims. Which is precisely the goal here. United sued multiple providers across the nation with the same complaints to discourage exercising NSA rights. (D.E. 33-1, at 3,5). This is precisely the type of vengeful litigation that the privilege is designed to prevent.

On the fraud claims, Plaintiff has come clean. While the Complaint falsely implies to the Court and public that Sood Medical engaged in fraud relating to 170 NSA awards (D.E. 1, at ¶¶ 5, 102, 112), Plaintiff now admits that was merely to "provide[] context … and was not an assertion that each claim was individually fraudulent." (D.E. 35, at 29). Because Plaintiff concedes there is only 1 fraud claim

relating to the August 25, 2025 IDR, the Court should enter an Order dismissing any other fraud claim as Plaintiff conceded it is only pleaded on a single instance, and any other claim was not pled with requisite particularity. F.R.C.P. 9(b).

As to the lone fraud claim, Plaintiff tries to bury that its fact allegations mismatch its legal claim. Factually: Plaintiff alleged that Greenspan attested that the "service(s) at issue are **qualified** … within the scope of Federal IDR process." (D.E. 1, ¶ 70). Legally: Plaintiff alleged that the fraud ("material misrepresentation of a presently existing or past fact") is that the claim was "**eligible**" for NSA IDR.[14] Plaintiff is trying to pull a fast one. These are 2 distinct terms of art. A representation of "qualification" is a statement regarding the type of medical services, *e.g.*, out-of-network services rendered at an in-network facility. (D.E. 33-1); 26 C.F.R. § 54.9816-8T(a)(2)(xi) (defining "Qualified IDR item or service"). Whereas an alleged representation on "eligibility" would regard the type of healthcare plan, *i.e.*, it is not a Medicare or Medicaid plan. *Id*. at 34 n.36. A statement that a claim "qualifies" for the NSA has absolutely nothing to do with whether it is "eligible." Plaintiff's entire "misrepresentation" theory is a house of cards. United knows that the NSA statute, CMS regulations and publications defined these terms.

Nor can Plaintiff allege causation or damages, because **before**, during and

---

[14] *See* Compl., at ¶ 109 ("Sood's false attestations of **eligibility** pertain to material facts in the NSA IDR process"); *accord id*. at ¶ 1-2, 5, 48, 101.

after the IDR proceedings, it had the opportunity to resolve "eligibility" but failed to submit any proof to the IDRE on eligibility. *See* pgs. 1-2 & fn.3, *supra*,[15]; *Blue Cross Ga.*, 2026 WL 2017291, at *25 ("Plaintiff pled itself out of Court by acknowledging that it had the opportunity to object to these misrepresentations before the IDRE."). Moreover, this case hangs by 1 conclusory paragraph alleging "agency." (D.E. 33-1, at 29-32). In sum, because the factual allegation ("qualifies") does not match the legal allegation ("ineligible"), there can be no causation or damages where Plaintiff neglected the preliminary step challenging eligibility, this action collaterally attacks an arbitration/IDR award, there is no factual content to the agency allegation, and for the other reasons stated at D.E. 33-1, at 32-37), Plaintiff cannot state a fraud.[16]

On the injunctive claims, in addition to the reasons already stated at D.E. 33-1, at 38-39, Plaintiff's injunctive claims should also be dismissed for reasons

---

[15] Plaintiff misleads the Court in arguing (D.E. 35, at 17) and alleging Defendant "forced United to rely on the misrepresentation because once the IDRE determined the dispute was eligible, <u>United had **no choice** but to expend resources to proceed with the process</u>, … and watch helplessly…." (D.E. 1, ¶ 108). This is false.

The truth is that **United was required to submit <u>proof</u> to Keystone <u>before</u> the proceeding if it contested eligibility**: "Upon the selection of [an IDRE], …. if the non-initiating party believes that the Federal IDR process is not applicable [*i.e.*, eligibility], the non-initiating party [United] must … provide information regarding the Federal IDR process's inapplicability" "by the same date that the notice of [IDRE] selection must be submitted." *See* 26 C.F.R. § 54.9816-8T(c)(1)(iii)-(iv). Plaintiff lost the IDR because it did not exercise, and **waived**, its remedies therein.

[16] **<u>Agency</u>**: This case hangs by 1 conclusory paragraph alleging "agency." (D.E. 33-1, at 29-32). While Plaintiff tries to deflect, it cannot escape that it failed to plead <u>facts</u> in the Complaint to satisfy the Third Circuit's standard in *Migliore*. *Id*.

articulated by the *Blue Cross Tex*. court, 2026 WL 1557492, at *7. On the punitive and fee-shifting claims, for the reasons already stated at D.E. 33-1, at 39-40, and this Court's cited decisions on this subject, Plaintiff's claims for punitive damages and fee-shifting should be dismissed.

For completeness, Plaintiff's repeated use of partial quotes from Defendant's opening brief to make factual argument (D.E. 35, at 25-26,28-30) is improper; the "facts" are those alleged in the Complaint as supplemented by Mr. Estes' Declaration. *Klotz*, 2019 WL 3712123, at *3 n.3 (D.N.J. Aug. 7, 2019) (**Wigenton**, J.) ("complaint cannot be amended through the brief").

Finally, for the reasons stated by the *Maui*, *Anthem* and *Blue Cross Ga*. courts, any attempt to amend its Complaint would be futile, and so should be denied.[17]

## CONCLUSION

For all the reasons in Defendant's opening brief and this reply, this Motion to dismiss the Complaint **with prejudice**[18] should be granted.

Respectfully submitted,

*/s/ Eric D. Katz*

Dated: August 21, 2026 ERIC D. KATZ

---

[17] *Maui*, 2026 WL 1965882, at *5 (denying United leave to amend); *accord Anthem*, 2026 WL 982629, at *11; *Blue Cross Ga*., 2026 WL 2017291, at *24-25.

[18] *Blue Cross Tex*., 2026 WL 1557492, at *7 (dismissing similar complaint "with prejudice"); *Blue Cross Ga*., 2026 WL 2017291, at *25 (same).